No. 14,942.

FEDDERSON *v.* GOODE.
(145 P. [2d] 981)

Decided January 24, 1944.

Mr. Philip Hornbein, Mr. J. H. Boutcher, for plaintiff in error.

Mr. William F. McGlone, for defendant in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as Fedderson, defendant in error as Goode, Carleton D. Beh and Carleton D. Beh Company (which is Carleton D.

Beh) as Beh, and the City and County of Denver as Denver.

Through the instrumentality of a duly enacted ordinance, Denver issued and sold to Beh certain refunding bonds approximating four million dollars, one-half of which Beh transferred to Goode, they having collaborated in the deal. Fedderson, claiming to have assisted them in the negotiation and consummation of the transaction, brought this suit against Goode for $8,750, being one-half of the commission claimed by him under contract and quantum meruit. Trial was to a jury. Both parties having rested, Goode moved for a directed verdict. That motion was sustained February 27, 1940, and to review the judgment entered accordingly Fedderson prosecutes this writ.

A brief statement of the undisputed facts which discloses the relationship between Goode, Beh and Fedderson from the institution of proceedings for the issuance of the bonds to the filing of this action is essential to an understanding of the questions here presented.

Long before January 1, 1938, Goode, a Denver investment broker, became acquainted with the Denver bond tangle and the necessity for, and possibility of, its solution by some such refunding plan as that finally adopted, and in the hope of profit to himself, had investigated the problem. December 28, 1937, he made Denver a proposition in the nature of an option on the proposed issue. January 17, 1938, an ordinance accepting his offer was passed on first reading and laid over for one week. Fedderson, a sort of scout in the field of municipal securities, who had for a considerable time theretofore acted in that capacity for Beh, apparently learned that all was not smooth sailing with the Goode project and got in touch with his associate, an investment broker of Des Moines, Iowa. As a result thereof Beh came to Denver and January 19, 1938, Goode first met these men in this city. On the next day Goode and Beh entered into a contract, evidenced by Goode's letter and Beh's accept-

ance, to the effect that they would jointly participate to the extent of $1,750,000 of the bonds for which Goode's proposition was then pending before the city; Beh to bear his proportionate share of the cost of printing the bonds, certain circulars which were contemplated, a special attorney's fee, and "other expenses that might be incurred in connection with issuance of bonds and be agreed upon by both parties *before being incurred.*"

January 24, 1938, Goode's proposition was rejected by Denver. Thereupon Beh made a somewhat different offer which was accepted by an ordinance passed on first reading February 7, 1938. One week later, February 14, Beh and Fedderson signed a contract to the effect that when all necessary steps had been taken to close the sale of the bonds to Beh he would pay Fedderson $17,500 for services he "has heretofore rendered and will continue to render *to the undersigned* * * * in connection with the above described matter," and that Denver should withhold delivery of the bonds to Beh until an acquittance was procured from Fedderson for the payment of said sum to him as therein provided.

February 16, 1938, Beh and Goode entered into an agreement, evidenced by a letter signed by the former and approved by the latter, to the effect that they would continue their joint arrangement as per their agreement of January 20, 1938, providing that if Beh's contract was ratified "and distribution or sale of bonds is to be made contrary to that agreement it is to be mutually agreed upon."

June 8, 1938, by letter from Beh to Goode, duly approved by the latter, the contract between them was somewhat modified and made more specific. It evidenced sale by Beh to Goode of one-half the total issue, provided for an equal division of the expense of the project (omitting all reference to Fedderson or his claim) and attached thereto was a schedule setting forth in minute detail the agreement for the division of the bonds between Beh and Goode.

July 1, 1938, Fedderson served on Denver a notice addressed to it, Goode, Beh, the First National Bank of Denver, and A. C. Allyn & Co. of Chicago, and all assignees of Beh and persons about to so act. It advised them that Fedderson was interested in the bond transaction under his contract of February 14, 1938, with Beh, a copy of which was attached. It called their attention to Fedderson's rights under that contract, asserted that no part of his compensation thereunder had been paid, that he had not executed the acquittance therein provided for, and warned that he would strictly enforce his rights and hold them to account.

August 2, 1938, Fedderson brought injunction against Beh and said A. C. Allyn & Co. setting forth his contract of February 14, 1938, with Beh; alleging that Denver had sold the bonds to Beh; that Beh's compensation for handling them was represented by commission coupons thereto attached; that Beh had agreed to deliver to him in discharge of his claim $17,500 of these coupons; that Beh had contracted over one million dollars worth of the bonds to Allyn & Co., none of which had as yet been delivered; that Allyn & Co. were fully informed of his rights, but that it and Beh were about to proceed in violation thereof. The prayer was for injunction to prevent that violation and an order to deliver to Fedderson $17,500 of the commission coupons. Two weeks later that suit was settled by stipulation from which it appears that Allyn & Co. had answered disclaiming and that Fedderson and Beh had "fully adjusted and settled all matters between them." It was therein further specified that the clerk of the court should deliver to Fedderson's attorneys $11,625 of said commission coupons. As so stipulated it was done.

About the date Fedderson sued Beh, Goode also brought an action against Beh to recover a balance he claimed due under their contract of June 8, 1938. By answer Beh alleged, as a part of his defense, payments made by him to Fedderson on account of the identical

services which are the subject of the instant suit. Instead of recovering anything therein that action was settled by a payment of $2000 by Goode to Beh.

Such is the background of the case now before us. The complaint herein was filed June 20, 1939, ten months after Fedderson's suit against Beh had been settled by stipulation as hereinbefore recited. It sets up three causes of action, each for services rendered Goode and Beh "as joint enterprisers." The first alleges a promise made February 14, 1938, by Goode and Beh to pay Fedderson $17,500 when their "joint enterprise," to have issued and sold to them the bonds in question, should be consummated. The second alleges that Fedderson is entitled to recover herein because on February 16, 1938, Goode adopted and approved for himself and the joint enterprise the contract between Fedderson and Beh of February 14, 1938. The third alleges that "at the request of the aforesaid joint enterprisers and each of them" Fedderson rendered services. Each count states a claim for $17,500 against the joint enterprisers and each alleges that Beh has paid $8750 thereon but that Goode has refused to pay. There followed a motion to make more specific, a bill of particulars, a motion to amend the bill, and a motion to separate. Following the disposition of these came the answer and replication and thus into the pleadings came all the writings hereinbefore mentioned. The answer denied all material portions of the complaint and alleged that in so far as Fedderson acted in the matter it was solely as the employee of Beh. It set forth the suit of Fedderson against Beh and its settlement, the suit of Goode against Beh, the aforesaid contention of Beh therein, and final settlement of that action. It further alleged full knowledge on the part of Fedderson of the last mentioned proceeding, and that he assisted in its preparation, was present at its trial, and by counsel and advice assisted Goode and his representatives; by reason of which conduct on Fedderson's part estoppel is pleaded herein. The repli-

**44**

cation admits Fedderson's suit against Beh and its settlement by stipulation as alleged; admits the service of Fedderson's notice upon Denver and Goode; admits the suit of Goode against Beh and that the latter therein defended on the ground that he had been obliged to pay Fedderson $17,500; and admits that Fedderson was present during the trial thereof, was familiar with the issues, and that the alleged settlement was made. Otherwise the replication denies the material portions of the answer.

Three of the twelve assignments are: 1. The exclusion of evidence of services rendered by Fedderson prior to February 14, 1938; 2. The exclusion of Fedderson's explanation of his omission of Goode as a party defendant in his suit against Beh; 3. Direction of a verdict for Goode, since, as it is contended, there was evidence to go to the jury. We limit our examination to these not only because no others are argued, but because what we have to say covers the remainder.

 1. Counsel for Fedderson offered evidence of services rendered by him to Goode prior to February 14, 1938. Objection thereto was sustained. He then sought to amend his complaint "by alleging a date prior to January 3." Leave was denied. Both rulings were correct. The complaint tied plaintiff's claim to February 14th. Moreover, on that date Beh alone contracted in writing to pay Fedderson his entire claimed compensation. Fedderson tied his claim to that contract when he served his notice upon Denver and attached a copy of it thereto. That contract was with Beh for services he had "heretofore rendered and will continue to render" to Beh only, and during at least a critical period of their rendition the interests of Beh and Goode were adverse. Moreover, it is not clear that the offered evidence was material to the point. As supporting his right to amend counsel invoke "Section 84 of the Code of Civil Procedure," now Rule 15 (a) and (b). The most that could possibly be said here is that the matter rested in the

sound discretion of the court, and we find no abuse of that discretion.

■ 2. Full particulars of the suit of Fedderson v. Beh were set forth in the answer and that pleading was not challenged. If prima facie material as a defense, but not so in fact because of some fraud practiced by Goode to induce Fedderson to omit him as a party defendant therein, allegation thereof was indispensable to the reply. It contains no hint of any such claim. The complaint in Fedderson v. Beh was introduced without objection. Fedderson offered to testify that Goode had been omitted as a defendant in that suit at his request and the request of his counsel because it would "embarrass" him. That was no reason. Since their interests were adverse and they were dealing at arm's length there is no presumption of influence. If Goode said or did anything which justified Fedderson in the omission it was clearly matter of defense to the allegations of the answer and could only be put in evidence if properly pleaded.

■■ 3. Was there evidence to go to the jury? Where but one inference or deduction is justified by the evidence, where but one conclusion can be drawn therefrom by reasonable men, or where a verdict for plaintiff, if rendered, ought to be set aside, the court should, on proper motion, direct a verdict for defendant. 64 C.J., p. 461, §§440, 441; *Miller v. Farmers Bank & Trust Co.,* 82 Colo. 373, 260 Pac. 112. True, we have the naked and unsupported statements of Fedderson that Goode was to shoulder one-half the compensation for which he had contracted with his principal. Every fact, every circumstance, every writing, all the conduct of all the parties as disclosed by the record before us, and every inference justified by that record, are to the contrary. Goode had been working on this bond deal for at least a year when Beh appeared on the scene, and his proposal had been embodied in an ordinance passed on first reading. Since Beh then desired to supplant him, and long maintained

that he had succeeded, their interests were diametrically opposed. Goode never met either of these men until January 19, 1938. No one of them trusted the others. Fedderson reposed no confidence in Beh, whom he had long worked with and for, but protected himself with an express written contract and to make assurance doubly sure took a lien for his entire compensation on the bonds to be issued to Beh. He hastened to notify Denver and all others concerned of that lien and that he proposed to strictly enforce it. He and Goode each sued Beh. Finally Fedderson sued Goode, apparently as an afterthought. Yet he would have the court believe that such was his simple faith in this stranger, from whom he and his principal had just taken the bond melon, that he never required from him the scratch of a pen to evidence an indebtedness of $8750 and risked the loss of that sum by omitting Goode as a defendant in his suit against Beh because he did not want to "embarrass" him. He sued Beh for the entire sum on his written contract with never a hint that Goode was a party thereto and equally liable thereon. He then settled the entire claim with Beh by a stipulation which gave him $11,625 in commission coupons, a sum which is unexplained save by the admission that payments made by Beh to Fedderson were relied upon by the former in defense of the suit against him by Goode. Fedderson admits payment by Beh of but one-half his alleged compensation, i.e., $8750. Moreover, it is impossible to read the admissions of this record and reach any other conclusion than that Fedderson was assisting Beh in Goode's suit against him which Beh was enforcing on the ground that he had paid Fedderson. For that reason alone the plea of estoppel herein should be sustained.

 Again, each of these causes of action is specifically against joint enterprisers for services rendered them as such in connection with that enterprise. But that enterprise contemplated no profits. These were to be repre-

sented, if at all, by the commission coupons attached to the bonds. Nothing could be realized until the bonds were sold. If sold for less than par the loss fell upon the seller. The relation between Beh and Goode never therefore extended to a possible profit. When the bonds were delivered and divided their relationship ended. Thereafter each was on his own. Neither might profit, or one profit and the other not, or their profits might be greatly disproportionate. "The chief characteristic of a joint adventure is a joint and not a several profit." *Commercial Lumber Co. v. Nelson,* 181 Okla. 122, 72 P. (2d) 829. Fedderson testified that he was fully informed of the entire course of negotiation and dealing between Beh and Goode and fully cognizant of all the writings between them. Those writings were very specific as to the equal division of all legitimate expenses, enumerating them. Therein compensation to Fedderson nowhere appears, no reason is offered for that omission, and the record discloses no suggestion by him that he should anywhere therein have his right of recovery against Goode recognized.

It seems clear to us from the foregoing that had this cause gone to the jury and any verdict for Fedderson been returned it would of necessity have been set aside. Hence the instructed verdict was correct.

One more reason exists why Fedderson can not recover herein so potent as to be controlling regardless of all that has been said supra, save the comment bearing upon his excuse for not joining Goode in his suit against Beh. It must now be borne in mind that Fedderson's alleged contract is wholly oral. The writings between Beh and Goode take no notice of him. His sole claim is that Goode verbally shouldered one-half the load which Beh in writing had assumed. If there was no such oral agreement Beh alone was liable. Since each cause of action stated a joint liability, and since Fedderson sued Beh for the whole and settled without qualification or reservation and without mention of Goode, he

had exhausted his remedy. *Townsend v. Heath,* 106 Colo. 273, 103 P. (2d) 691. The rule in Colorado, and generally throughout the Union, as appears from the following cases and the decisions and statutes therein cited, is: Where action is upon a joint contract and the evidence discloses only a joint obligation, the judgment must go against all defendants or none; but if a several judgment would be proper and the evidence shows some liable, and others not, judgment may go against those only who are liable. *Heckman v. Manning,* 4 Colo. 543; *Duncan v. Capehart,* 40 Colo. 446, 90 P. 1033; *Townsend v. Heath,* 106 Colo. 273, 103 P. (2d) 691; *Beatty v. Resler,* 108 Colo. 434, 118 P. (2d) 1084. For the same reasons the reverse of that rule is true. If action be brought against a single defendant for the entire claim and the evidence discloses his sole liability, or the litigation be settled on that basis, suit can not thereafter be sustained against another on the theory of his joint liability.

The judgment is affirmed.