No. 16,922.

CLEMANN ET AL. *v.* BANDIMERE ET AL.
(259 P. [2d] 614)

Decided July 6, 1953.

Mr. PHILIP A. ROUSE, for plaintiffs in error.

Mr. FRANK A. BRUNO, Mr. WESTEL B. WALLACE, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

PLAINTIFFS in error, doing business as Midwest Trades School, herein referred to as the school, were defendants below, and defendants in error, doing business as Bandimere Auto Parts and Supply Company, referred to as the parts company, were plaintiffs. The school engaged in the training of automotive mechanics and, in connection with its program, invited the public to bring automobiles to the school for repair without expense except for the purchase of needed parts, the work being done by student mechanics. The car owner signed written agreement to leave the car and to pay for all parts necessary to put the car in first-class condition. During the latter part of the period here involved, such agreement provided that the owner would pay for all parts before the car was delivered to him.

By some arrangement not in writing, plaintiff parts company, during a period of seven months, from May 1, 1949 to December 1, 1949, furnished parts for use in the repair of cars by the school as well as so-called consumable supplies which were not to be paid for by the car

owners but by the school. Such consumable supplies were billed to the school and paid for monthly.

During the seven months' period, the parts to be charged to car owners averaged around $5,000 per month. As each car was received for repair, list of needed parts therefor was made out and sent to the parts company, which delivered them to the school, together with an invoice thereof. Due to the age and variety of cars, it was difficult to obtain the right parts and frequently necessary to return parts received and obtain others in their stead, which often resulted in confusion as to the correct charges.

The school had an office where parts were received from the parts company and distributed for car repair and where the owners came after the repairs were completed for checking up and payment. It appears that the school usually had an employe there who would check with the invoice the parts used or returned and take payment and release the car, and that plaintiff parts company also usually had a partner or an employe there to receive the money. There was substantial testimony that sometimes payment was made direct to the plaintiffs or their employes, and that in other cases plaintiffs made credit arrangement direct with the owners. Differences arose concerning the correct ordering and furnishing of parts with the result that the parties terminated their relationship. Thereafter the school sent many owners to the parts company for payment of their bills and they in that way collected more than $2,000. On December 20, 1949, apparently without ever rendering a statement or making a demand on defendants, plaintiffs brought suit against the school both for the balance admittedly due for consumable supplies, the amount of which defendants tendered into court, and for balance claimed to be due for car parts used on cars repaired for outside owners. In the complaint plaintiffs alleged debt by defendants for goods sold and delivered to them. Defendants answered by general denial except as to the consumable

supplies, and alleged that the other parts were sold by plaintiffs to persons other than defendants. Trial was to a jury. After conclusion of the evidence, the court made findings as follows:

"The Court: Gentlemen, I can find no disputed facts in this evidence. In fact, I find that there is no dispute in the evidence. It would be difficult to conceive of a case in which there is more agreement among the parties as to what actually happened.

"Stripped of all of the mechanics involved, it is easy to see that all parties agree that the plaintiff was to furnish parts, that the automobile school was the conduit through which the parts would flow, and was responsible for the collection and remittance back to the plaintiffs. Therefore the only dispute is as to the legal effect of such an arrangement.

"I find that such an arrangement creates an agency in which the automobile school was to act as agent for Bandimere in delivering and installing the parts and in collecting the money. The automobile company has defaulted in that agency and has breached the contract in refusing to collect the money. It seems to me that having performed part of the agency, namely, having delivered the parts, it is responsible for the collection for those parts which it allowed to get out from under its control and from the automobile owners who were allowed to take their cars out of the shop. That being the case, I can see nothing for the jury to decide. The fair value of the parts is admitted by the parties. An accounting has been made, and there is no dispute that the parts were supplied, that they were used by the school, and that the school in reprisal against the plaintiffs refused and neglected to collect."

Upon such findings, the trial court granted plaintiffs' motion for directed verdict and judgment was entered accordingly for $5085.15, the total amount claimed. Defendants here seek reversal of the judgment, except as to the amount admittedly due and tendered into court.

█ In their complaint, plaintiffs' claim was based on sale and delivery of the automobile parts to defendants and their promise to pay therefor. After close of the evidence, plaintiffs sought and were permitted over objection to amend the complaint so "that it conformed to the undisputed proof that there was an agency between the defendants and the plaintiffs for the collection of this money as well as the sale of these parts for them." In fact, no amendment was made. Under Rule 15(b) of our Rules of Civil Procedure, when issues not raised by the pleadings are tried by express or implied consent of the parties they should be treated in all respects as if they had been raised in the pleadings. However, in the record here we find no proof, undisputed or otherwise, that there was an agency between defendants and plaintiffs or that any issue as to agency was tried by express or implied consent. Plaintiff John C. Bandimere testified that the school was to pay for the parts and that he remembered no agreement that supplies were to be paid by the customer. Plaintiffs' employe Augustine testified that the only understanding he had was that the customer paid Mr. Bandimere for the parts, and defendant William F. Clemann testified that under the agreement plaintiffs would furnish the parts and collect the money from the owner of the automobile, and that the school wouldn't be responsible for those parts in any way. There is testimony that frequently at the office where payment was made there would be present both an employe of the school and Mrs. Bandimere or some employe of the parts company, and that sometimes the money would be paid directly to Mrs. Bandimere or her employe, and sometimes to an employe of the school and turned over to them, but there was no evidence whatever that this was done pursuant to any agreement as to agency or obligation by the school. Further, it would appear that the money here in dispute is not money actually collected by defendants, but rather money due on parts not paid for by car owners. There was no showing

that defendants were at fault in the failure to collect such payments and mere agency to collect would not of itself create obligation for money not collected. Amendments such as here allowed should be granted after the close of the evidence only in cases where no reasonable doubt remains that the issue raised by the amendment has been intentionally and actually tried. It is not enough that some evidence has been received germane to the issue sought to be raised. *Globe Liquor Company v. San Roman,* 160 F. (2d) 800; *Simms v. Andrews,* 118 F. (2d) 803.

Even assuming the amendment proper, the trial court erred in its finding that it was undisputed that the school "was responsible for the collection and remittance back to the plaintiff." As hereinbefore noted, there was no evidence at all that it was responsible for such collection and remittance, but only that it was directly liable to pay, and such evidence was met by positive and substantial denial. The trial court further erred in finding that the school "defaulted in that agency and has breached the contract in refusing to collect the money." There was no evidence whatever as to any default or refusal to collect the money other than evidence that the school sent various owners to the plaintiffs to make payment. Certain invoices were offered by plaintiffs as to parts "on the cars that had left the school without our being paid for them at the time we left." But there was no evidence as to reason or responsibility therefor and the parts company admitted that automobiles representing parts of the value of $2606.39 were still at the school at the time of their last knowledge. In light most favorable to plaintiffs, the evidence raised only an issue of fact to be resolved by the jury.

Fact statements in briefs should be objective and not argumentative, and counsel, as officers of the court, are obligated to strict accuracy in their statements of fact, so that the court may rely on them. Violations of this basic obligation of counsel in the brief of defendants

in error here have imposed extra burden on the court and should not be repeated.

Judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.