[Civ. No. 26908. Fourth Dist., Div. One. Nov. 29, 1983.]

HELEN CUNNINGHAM, Plaintiff and Respondent, v.
RETAIL CLERKS UNION, LOCAL 1222, Defendant and Appellant.

## Counsel

Nancy J. Spieczny, Douglas F. Olins and Olins, Foerster & Siegel for Defendant and Appellant.

James E. McElroy and Schroeder & McElroy for Plaintiff and Respondent.

## Opinion

**BUTLER, J.**—Helen Cunningham was hired in 1958 by Local 1222 to work in the office. She was told her salary, holidays, sick leave and vacations would track like benefits provided for under a collective bargaining agreement between Local 1222, the Food Employers Council, Inc. and Independent Retail Operators (the Food Contract). As the Food Contract was renegotiated from time to time over the years and wage, pension and other benefits increased, she enjoyed increases in these benefits. While Cunning-

ham joined and continued to be a member in good standing of Local 1222, she was not included within any bargaining unit under the Food Contract or any other collective bargaining agreement. She and the other office employees, while members of the union, were simply employees of the union.

From 1973 to 1975, Local 1222 suffered internal strife and was placed under trusteeship by the Retail Clerks International Union. In the fall of 1975, new local union officers were elected, and Tom Vandeveld became president. Cunningham, with other office employees, supported the opposition slate.

During the turmoil of the election campaign, most of the office staff were concerned their jobs would be jeopardized should the old guard lose out. They talked amongst themselves as to various options, and Cunningham at several meetings explained how to apply for disability benefits. Cunningham herself consulted a psychiatrist who directed her not to work after October 31, 1975, because of job stress.

Coincidentally, on the Monday following the election, November 1, 1975, Cunningham did not report for work along with a number of her fellow office employees. On November 10, 1975, she applied for workers' compensation. On November 14, the union received a copy of a letter from her psychiatrist explaining her disability. Cunningham continued to absent herself from work and was fired on January 16, 1976, by Vandeveld. After her attorney told Vandeveld an employee with an industrial injury could not be fired, he rescinded her termination.

On May 10, 1976, the psychiatrist released Cunningham and she reported to work for the union office. On May 12, 1976, Vandeveld fired her. He did not send her a written warning notice. On May 18, 1976, she complained to the executive board her termination violated the union constitution. Receipt of her letter was acknowledged. No action was taken. Cunningham then filed formal charges with the National Labor Relations Board which declined to issue a complaint and denied her appeal.

On May 12, 1978, Cunningham filed this lawsuit alleging damages for breach of the oral or implied contract governing the conditions of her employment. A jury awarded her $95,000 for back pay and lost pension. The union appeals contending: (1) the court improperly exercised jurisdiction over the matter as the claims were preempted by the National Labor Relations Act; (2) there was insubstantial evidence to support the conclusion Cunningham exhausted her administrative remedies; (3) Cunningham failed to mitigate her damages; and (4) the court failed to give a statute of limitations instruction.

# I

## *Jurisdiction*

The union complains the state court should not have heard the case. ▮
When it is clear a state purports to regulate activities protected by section
7 of the National Labor Relations Act (the Act),[1] or prohibited as an unfair
labor practice under section 8, the state must be precluded from acting.
(*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244 [3 L.Ed.2d 775,
782, 79 S.Ct. 773].) This is so because "[t]o leave the States free to regulate
conduct so plainly within the central aim of federal regulation involves too
great a danger of conflict between power asserted by Congress and require-
ments imposed by state law." (*Ibid.*)

When management or labor conduct "arguably" is protected or prohibited
under the Act, the adjudication of such interests lies within the exclusive
jurisdiction of the National Labor Relations Board. (*United Farm Workers
Organizing Committee* v. *Superior Court* (1971) 4 Cal.3d 556 [94 Cal.Rptr.
263, 483 P.2d 1215].) The board is empowered to effect the primary aim
of the Act to promote the full flow of commerce and "to prevent any person
from engaging in any unfair labor practice . . . ." (29 U.S.C. § 160, subd.
(a); *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union*
(1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325].)

Preemption is designed to shield the system from conflicting regulation
of conduct. It is the conduct being regulated, not the formal description of
governing legal standards, that is the proper focus of concern. (*Motor
Coach Employees* v. *Lockridge* (1970) 403 U.S. 274 [29 L.Ed.2d 473, 91
S.Ct. 1909].) Thus, the states have the power to regulate where the activity
is a "merely peripheral concern of the Labor Management Relations Act.
[Citations.] Or where the regulated conduct touched interests so deeply root-
ed in local feeling and responsibility that, in the absence of compelling
congressional direction, we could not infer that Congress had deprived the
States of the power to act." (*San Diego Unions* v. *Garmon, supra,* 359
U.S. at pp. 243-244 [3 L.Ed.2d at p. 782].)

▮ The narrow issue presented is whether the union as employer and
Cunningham as employee have a conflict so remote to the federal scheme

---

[1] 29 United States Code 157 provides: "Employees shall have the right to self-organiza-
tion, to form, join, or assist labor organizations, to bargain collectively through represen-
tatives of their own choosing, and to engage in other concerted activities for the purpose of
collective bargaining or other mutual aid or protection, and shall also have the right to
refrain from any or all of such activities except to the extent that such right may be affected
by an agreement requiring membership in a labor organization as a condition of employment
as authorized in section 158(a)(3) of this title."

and particularized as to them such that it was heard before the proper tribunal. In *Machinists* v. *Gonzales* (1958) 356 U.S. 617 [2 L.Ed.2d 1018, 78 S.Ct. 923], the matter was properly before the state court when Gonzales complained he was unable to obtain employment and suffered damages because of his loss of union membership. Gonzales had alleged his damages arose as a result of a breach of contract. An ousted union member was entitled to vindicate his personal rights before the state court. "[T]he subject matter of the litigation in the present case, as the parties and the court conceived it, was the breach of a contract governing the relations between respondent and his unions. [Fn. omitted.] The suit did not purport to remedy or regulate union conduct on the ground that it was designed to bring about employer discrimination against an employee, the evil the Board is concerned to strike at as unfair labor practice '. . . The state court proceedings deal with arbitrariness and misconduct vis-a-vis the individual union members and the union; the Board proceeding, looking principally to the nexus between union action and employer discrimination, examines the ouster from membership in entirely different terms. [Citations.]'" (*Gonzales, supra,* 356 U.S. at pp. 621-623 [2 L.Ed.2d at pp. 1022-1023].)

Guided by these principles, we review the dispute. The gravamen of Cunningham's complaint is her employer fired her without warning and without cause. In doing so, the employer breached an oral or implied contract. Cunningham sued for damages arising out of such breach.

Neither the pleadings nor the evidence show any unfair labor practice as defined by the Act. The terms of Cunningham's employment followed an express practice and policy of the union's executive officer. Notably, there is a lack of evidence Vandeveld restrained or coerced Cunningham from freely engaging in any collective bargaining process, choosing a representative, or joining a union of her choice. She was not discouraged in any way from remaining a member of the union. It may be reasonably inferred from the jury's verdict they found Vandeveld's preference for a loyal staff a purely personal vindictive motive rather than a sufficient cause to fire Cunningham.

We decide the complained of conduct falls within those categories of cases where the possibility of conflict with federal policy is too contingent or too remote to exclude the state from adjudicating the dispute, and the matter was properly heard before the state court.

Before filing this lawsuit, Cunningham filed charges before the National Labor Relations Board complaining the union "terminated [her] in violation of her Section 7 rights because she actively supported the oposition [*sic*] candidates during an internal Union election." The board did not issue a

complaint. "As a result of the investigation, it does not appear that further proceedings on the charge are warranted. The investigation disclosed that your termination occurred following an extended period of absence for medical reasons. *There is insufficient evidence to establish that your termination was in any way a result of any activity in which you may have engaged which would be protected under the National Labor Relations Act,* or to refute the Employer's contention that your termination was solely the result of lack of work in your classification. I am, therefore, refusing to issue a complaint in this matter." Cunningham's appeal to the General Counsel was denied for substantially the same reasons. Opposition to a successful candidate in the union's 1975 election "would not constitute a violation of Section 8(a)(1) and (3) of the National Labor Relations Act, as amended."

Union's reliance on *Local 926, Intern. Union of Oper. Eng.* v. *Jones* (1983) 460 U.S. 669 [75 L.Ed.2d 368, 103 S.Ct. 1453], is misplaced. There, union member Jones, a supervisor, was fired by his employer, a power company. Jones earlier worked for a nonunion company. He claimed his union maliciously intimidated and coerced his employer to fire him for the earlier nonunion employment. The National Labor Relations Board refused to issue a complaint, holding the power company fired Jones because of changes in the supervisory structure.

Jones then filed a lawsuit in state court for breach of contract alleging the union coerced his employer and caused him to be fired. The trial court dismissed his complaint for lack of jurisdiction.

The United States Supreme Court decided the union's conduct was arguably covered under the Act, and the state court properly declined to hear the case.

Jones was hired as an equipment superintendent. In this capacity, he would likely be authorized or expected to deal with grievances arising under the collective bargaining agreement. If the union was responsible for Jones' discharge, it thus arguably coerced the company in the choice of its collective bargaining representative, a prohibited activity under the Act. (29 U.S.C. § 158(b)(1)(B).)

The case did not turn on whether the NLRB declined to issue a complaint. The court noted Jones did not satisfy ordinary primary jurisdiction requirements as he failed to appeal the regional director's rejection of the complaint. The matter was preempted because the conduct was "arguably" prohibited under the Act.

Here, the board failed to issue a complaint since this case is one of the type the board declines to hear. To give proper effect to a complaint charg-

ing termination caused by intraunion political activities under the provisions of section 8(a)(3) of the Act, evidence must be presented to show the discharge was motivated by union animus and the conduct would have the foreseeable effect of either encouraging or discouraging union membership. (*Retail Clerks, Local 770 (Carl A. Palmer)* (1974) 208 N.L.R.B. 356.)

Cunningham was a member of the union and was required to be so as a condition of employment. Cunningham did not attempt to resign her union membership. Her interest in the election was in effecting managerial change within the organization itself. There is no evidence she engaged in concerted or union activities in seeking a separate and independent representative for the purpose of collective bargaining.

■ The union argues even if the state court forum was proper, federal law should apply. They assert as Cunningham claims she was improperly denied the benefits of a collective bargaining agreement—the Food Contract—her lawsuit is subject to federal regulations under the provisions of 29 United States Code section 185: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Whether to apply federal law depends upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies.

We do not agree this action is for a breach of a collective bargaining agreement. The dispute is between a union and one of its employees for breach of an implied or oral employment contract. The union and major food store chains negotiate a collective bargaining agreement setting forth such conditions of employment as wages, hours, vacations and pensions. Cunningham was not a party to the contract, although its benefits inured to her by virtue of oral promises and written policies of the local's executive officers. Although Cunningham seeks to enforce such terms and conditions with regard to termination similar to those in a collective bargaining agreement, the damages do not arise out of enforcement of that agreement but emerge from her 16-1/2 year contract with the local union as an office employee. Indeed, the state has an interest in protecting its citizens from breaches of employment contract.

■ This case involves interests unique to Cunningham and adjudication of these interests does not affect federal labor policies or cause conflict in remedies such that the doctrine of preemption comes into play.

## II

### *Exhaustion of Remedies*

█ The union next complains substantial evidence does not support Cunningham exhausted her administrative remedies. Both the collective bargaining agreement and the union's constitution and bylaws outline procedures for grievances. The union asserts since Cunningham brings her cause of action under the Food Contract, she must abide by all its provisions including the grievance procedures. They argue Cunningham's letter to the local union executive board complaining of her termination does not comply with these procedures.

These contentions misconstrue the nature and basis of Cunningham's claim. Cunningham's suit is premised upon employment by the union, not upon membership in it. This is not an action under the Food Contract.

In 1973, the executive officer of Local 1222, Bill Wall, issued a memorandum to all office personnel setting forth the employment policies for office staff. The memorandum provided: "While it is recognized that office employees are not covered by a labor agreement, in that the majority of members are food members, it is felt that using the wages, holidays, sick leave and vacations in the food contract as a policy basis for establishing conditions has merit." The memorandum conditioned employment on joining the union. Following a 31-day probationary period, an employee might be "terminated for cause." Before an employee could be discharged, however, a written warning notice was required and an employee could discuss such warning with the chief executive officer.

Cunningham's remedies as such were outlined in Bill Wall's memorandum. By its provisions, she was entitled to written notice of discharge and the opportunity to discuss it.

The executive officer fired Cunningham without such notice. Nevertheless, Cunningham complied by complaining to the executive board by way of letter. All she received was a written acknowledgement. The union took no other action.

The written notice triggers the procedures. The union failed to set the grievance procedures in motion and may not now complain Cunningham did not comply.

As this lawsuit is not under the Food Contract, the grievance procedures outlined there do not apply to Cunningham. In *Jacobs* v. *Retail Clerks*

*Union, Local 1222* (1975) 49 Cal.App.3d 959 [123 Cal.Rptr. 309], Jacobs had been a salaried employee of the union as an organizer for 20 years, during which time he had not received compensation for unused sick leave or for overtime work. Jacobs claimed and was awarded severance pay. In holding the requirement of exhaustion of internal remedies was inapplicable to such a cause of action, the court stated: "His claim for unpaid wages as an employee is not an internal controversy or grievance arising out of membership in the union which the constitutional provisions relied upon seek to regulate. His right to judicial determination of his wage claim is no more limited by the provisions in the union's constitution regulating its internal affairs than it would have been had he been injured and filed a claim for workers' compensation benefits." (*Id.*, at p. 964.)

### III

### *Mitigation of Damages*

■ Following six months of attempts to find work, Cunningham landed a job with Local 324 of the same union in Buena Park, California. She worked there for six months and finally had to leave to seek a job in San Diego due to the great expense incurred in working out of town. Cunningham was a widow, had lived and worked in San Diego for over 25 years, had a home in San Diego, was paying a mortgage on that home and had no other outside means of support. While working in Buena Park, Cunningham had to rent an apartment there and commute to San Diego on weekends to care for her home.

Cunningham found a job with the Carpenters Union in San Diego where she has continued to work ever since. Her wages and pension are less than what she would have received had she remained at Local 324. The evidence showed her wages and pension at Local 324 would have been the same as those she had been receiving at Local 1222. The union complains Cunningham's rejection of a position offering the same wage and pension rates as her original job is an inadequate attempt to mitigate her damages.

■ An employee is required to make reasonable efforts to secure other employment. There is no obligation to seek or accept any and all types of work which may be available. Only work which is in the same field and which is of the same quality need be accepted. (*Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) And it has been held: " 'Even assuming that plaintiff . . . could have obtained employment in ports other than . . . where he resided, *legally* he was not compelled to do so in order to mitigate his damages.' " (*Williams* v. *National Organization, Masters, etc.* (1956) 384 Pa. 413 [120

A.2d 896], cited with approval in *Parker, supra,* 3 Cal.3d at p. 183, fn. 5.) ▮▮ Here we are called upon to decide whether Cunningham's rejection of the Buena Park job was reasonable. We conclude Cunningham made reasonable efforts to obtain other employment. It was reasonable to reject a position which required she rent another place to live, imposed added financial burdens, and forced her away from her home and community of 25 years.

## IV

### *Statute of Limitations Instruction*

▮▮ Finally, the union asserts the court erroneously refused the two-year statute of limitations instruction for contracts. The union now contends the breach occurred in 1973—the date Bill Wall sent a memorandum to office workers stating they were not under the Food Contract. At trial, however, the union proceeded on the theory Cunningham mistakenly relied on the Food Contract which was "modified" in 1973, and she voluntarily quit in 1976.

Both the pleadings and the evidence support a breach occurred in 1976 when Cunningham was terminated. ▮▮ A defendant is entitled to an instruction based on a defense theory of the case if it is reasonable and finds support in the pleadings and evidence or any inference which may be properly drawn from the evidence. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 192, p. 3012.) ▮▮ This theory is neither supported by the evidence nor was it relied upon at trial. Although the statute of limitations is asserted as a defense in the answer, the issue was not raised in the motion for summary judgment. In opening statement and closing argument, defense counsel contended if there was a contract, it was modified in 1973. Nothing by way of evidence or argument or otherwise was presented to the jury on this issue. Given the posture of the case, the instruction would only have confused the jury, and it was properly refused.

Judgment affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied December 23, 1983.