Annette Y. **LYONS**, Plaintiff–Appellee and Cross–Appellant,

v.

**TEAMSTERS LOCAL UNION NO. 961,** Defendant and Third–Party Plaintiff–Appellant and Cross–Appellee,

v.

Derl **FORBIS**, Third–Party Defendant and Counterclaimant–Appellee.

No. 93CA1915.

Colorado Court of Appeals, Div. IV.

Aug. 10, 1995.

Andrew T. Brake, P.C., Andrew T. Brake, Lee T. Judd, Denver, for plaintiff-appellee and cross-appellant.

Berenbaum, Weinshienk & Eason, P.C., Martin D. Buckley, Stephen K. Schutte, Denver, Steven M. Segall, Lakewood, for defendant and third-party plaintiff-appellant and cross-appellee.

William E. Myrick & Associates, William E. Myrick, David Hollar, Denver, for third-party defendant and counterclaimant-appellee.

Opinion by Judge KAPELKE.

In this wrongful discharge action, defendant, Teamsters Local Union No. 961 (Union), appeals from the judgment entered on a jury verdict awarding damages to plaintiff, Annette Y. Lyons. The Union contends that the trial court erred in denying its motion to dismiss Lyons' claims because they were preempted by the Labor Management Relations Act (the LMRA), 29 U.S.C. § 141, et seq. (1978). The Union also appeals from the judgment entered against it and in favor of third-party defendant and counterclaimant, Derl Forbis. In a cross-appeal, Lyons challenges the trial court's denial of her motion to amend the complaint and the denial of her request for an award of attorney fees. We affirm.

In her complaint, Lyons alleged that the Union hired her in 1989 as a secretary and bookkeeper. Upon her hiring, Lyons was not included within any bargaining unit or collective bargaining agreement that the Union had entered into with various employers on behalf of its membership. However, Lyons alleged that the Union, through Forbis its president, promised that her employment would be subject to the same terms and conditions as were contained in collective bargaining agreements the Union had negotiated, including the National Master Freight Agreement and the Western States Area Supplemental Agreement. With respect to employment termination, the collective bargaining agreements themselves contained a progressive disciplinary scheme, a just cause requirement, and a protest and grievance procedure.

In December 1990, the members of the Union elected a new president to succeed Forbis, and in January 1991, Forbis retired. The new president became Lyons' supervisor.

In May 1991, the Union terminated Lyons. Her termination letter stated that she had been discharged "for reasons including, but not limited to, insubordination, willful neglect and damage to the [Union's] property and interest, [and] careless and shoddy work." After filing a protest and grievance pursuant to the procedure set forth in the collective bargaining agreements, Lyons filed her complaint alleging that the Union had terminated her without just cause and that the Union had violated various discharge provisions as contained in the collective bargaining agreements.

In its answer, the Union maintained that Lyons was not covered by the collective bargaining agreements and that she was not a party to any other employment contract with the Union. The Union thus claimed that Lyons was an "at-will" employee who could be discharged without notice or cause. Alternatively, the Union contended that, even if the terms of the collective bargaining agreements applied to Lyons, there was sufficient cause for her termination.

The Union filed a third-party complaint against Forbis, alleging that he breached his fiduciary duty to the Union by promising Lyons that the terms of the collective bargaining agreements would govern her em-

ployment with the Union and by binding the Union to a contract with Lyons that extended beyond Forbis' term of office. Forbis filed a counterclaim for breach of contract and breach of fiduciary duty.

The jury returned a verdict in favor of Lyons on her breach of contract and promissory estoppel claims against the Union. In addition, the jury found against the Union on its claims against Forbis and in favor of Forbis on his counterclaim against the Union.

The trial court thereafter granted Forbis' application for costs, interest, and attorney fees pursuant to § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). The court denied Lyons' request for an award of attorney fees.

## I.

The Union first contends that the trial court erred in denying the Union's motion to dismiss Lyons' claims for wrongful discharge and promissory estoppel. More specifically, the Union contends that Lyons' claims are preempted by the LMRA and that the trial court therefore lacked subject matter jurisdiction. We disagree.

■ Section 301 of the LMRA provides, in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185 (1978). As interpreted by the courts, this provision does not preempt state court jurisdiction. Rather, state courts exercise concurrent jurisdiction with federal courts over actions involving the construction or enforcement of collective bargaining agreements. *Alexander v. Standard Oil Co.,* 53 Ill.App.3d 690, 11 Ill.Dec. 402, 368 N.E.2d 1010 (1977).

■ Section 301 was intended to authorize federal courts to develop a body of substantive federal law to address disputes arising out of union labor contracts and to ensure national uniformity in this area. *Ferris v.*

*Bakery, Confectionery & Tobacco Union, Local 26,* 867 P.2d 38 (Colo.App.1993). Thus, while state courts may exercise jurisdiction over federal claims brought under the LMRA, § 301 preempts state law claims arising out of union labor contracts. *Teamsters Local No. 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1963).

■ While the interest in uniformity is a basis for determining whether a state law claim is preempted, "not every claim which tangentially involves an agreement is preempted." *Ferris v. Bakery, Confectionery & Tobacco Union, Local 26, supra,* 867 P.2d at 43. The preemption issue must be determined on a case by case analysis of whether resolution of the claim depends on the interpretation of the collective bargaining agreement. *Lingle v. Norge Division, Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

■ In order to invoke jurisdiction under § 301, a litigant must allege a breach of a contract between an employer and a labor organization or of a contract between labor organizations in an industry affecting commerce. *See Painting & Decorating Contractors Association of Sacramento, Inc. v. Painters & Decorators Joint Committee of the East Bay Counties, Inc.,* 707 F.2d 1067 (9th Cir.1983). Section 301 does not apply to a breach of contract action based on a purely private agreement between an employer and an individual employee which does not actually involve enforcement of a collective bargaining agreement. *Alexander v. Standard Oil Co., supra.*

Here, Lyons does not allege a breach of a contract between an employer and a union or of a contract between unions. Rather, she contends that the Union breached its private employment contract with her and that certain of the *terms of that contract were derived from* the form of collective bargaining agreements between the Union and certain signatory employers. Thus, she contends, the contract between the Union and Lyons is not a collective bargaining agreement as such, but rather a private employment contract between the Union and one of its em-

ployees. She urges that the terms contained in the collective bargaining agreements served as the equivalent of an employee manual.

In *Cunningham v. Retail Clerks Union, Local 1222,* 149 Cal.App.3d 296, 196 Cal. Rptr. 769 (1983), a factual situation almost identical to the one here culminated in an action by the discharged employee, who alleged that the union had breached the oral or implied contract governing the conditions of her employment. A jury found in favor of the employee, and the union appealed, contending that her claims were preempted by § 301 of the LMRA.

In rejecting the union's arguments, the California Court of Appeal concluded:

> We do not agree this action is for a breach of a collective bargaining agreement. The dispute is between a union and one of its employees for breach of an implied or oral employment contract. The union and [the outside employers] negotiated a collective bargaining agreement setting forth such conditions of employment as wages, hours, vacations and pensions. Cunningham was not a party to the contract, although its benefits inured to her by virtue of oral promises and written policies of the local's executive officers. Although Cunningham seeks to enforce such terms and conditions with regard to termination similar to those in a collective bargaining agreement, the damages do not arise out of enforcement of that agreement but emerge from her ... contract with the local union as an office employee....
>
> This case involves interests unique to Cunningham and adjudication of these interests does not affect federal labor policies or cause conflict in remedies such that the doctrine of preemption come into play.

*Cunningham v. Retail Clerks Union, Local 1222, supra,* 149 Cal.App.3d at 304, 196 Cal. Rptr. at 774.

Thus, the California court held that the case fell "within those categories of cases where the possibility of conflict with federal policy is too contingent or too remote to exclude the state from adjudicating the dispute." *Cunningham v. Retail Clerks Union, Local 1222, supra,* 149 Cal.App.3d at 302, 196 Cal.Rptr. at 772.

Here, an identical analysis applies and leads us to the same conclusion that the *Cunningham* court reached. *Accord Alexander v. Standard Oil Co., supra.*

■ Lyons' claims in this suit do not require an interpretation of the collective bargaining agreements as such, but rather interpretation of the parties' private employment contract, which happens to have adopted by incorporation certain provisions and procedures included in the collective bargaining agreements. Plaintiff's claims do not arise out of a union labor contract within the meaning of § 301, and therefore, permitting her to pursue her state-law claims does not frustrate the LMRA's goal of ensuring national uniformity in the enforcement of union labor contracts. *See Alexander v. Standard Oil Co., supra; Cunningham v. Retail Clerks Union, Local 1222, supra.*

If, as the Union contends, there is a preemption of state law claims whenever a party's private contract borrows provisions from, or is modeled after, a form of collective bargaining agreement, any private employer could adopt as its employee manual the provisions of a collective bargaining agreement and thereby shield itself from suit and prevent its employees from enforcing their employment contracts.

In our view, suits such as this one involve conflicts so remote to the federal scheme and so unique to the parties involved that the state-law claims are not preempted by the LMRA.

Contrary to the Union's assertion, *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) and *Tyra v. Kearney,* 153 Cal.App.3d 921, 200 Cal.Rptr. 716 (1984) do not compel a different result.

In *Finnegan,* the plaintiff was a union business agent who had vigorously supported an opposing candidate in a contested election for the union presidency. After the election, the new president discharged plaintiff and other business agents who had opposed him. The union's bylaws and its constitution gave the president authority to hire and fire poli-

cymaking representatives and assistants at any time.

Finnegan brought suit in federal court for alleged violations of his rights under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401, et seq. (1985) (LMRDA). He claimed that he could not be discharged for having exercised political rights guaranteed a union member by the LMRDA.

The United States Supreme Court held that Finnegan's discharge did not violate the LMRDA. The Court determined that while the LMRDA generally protects union members' rights of expression by limiting retaliatory discharges, the Act does not restrict the freedom of an elected union leader to select policymaking employees with compatible views. The court held that permitting unions to discharge policymaking subordinates whose views are incompatible with those of the union's elected officials is consistent with the LMRDA's overriding objective of democratic union governance and that the right to terminate such employees is an integral part of ensuring that union administrations are responsive to the will of union members.

The Supreme Court specifically limited its holding to employees who are "instrumental in evolving the president's administrative policies" and left open the question whether a different result would obtain in a case involving non-policymaking and non-confidential employees. *Finnegan v. Leu, supra,* 456 U.S. at 443, 102 S.Ct. at 1874, 72 L.Ed.2d at 248 (Blackmun, J., concurring).

Notably, *Finnegan* is not a preemption case. The Supreme Court merely held that an appointed policymaking union employee has no wrongful discharge remedy under the LMRDA, which addresses the relationship between union officials and union employees in their status as *members,* not in their status as employees.

In *Tyra v. Kearney, supra,* the California Court of Appeal extended the *Finnegan* analysis and held that a wrongful discharge claim under state law is preempted by the provisions of the LMRDA. In *Tyra,* the plaintiff was a union business agent who had challenged the incumbent secretary/treasurer

in a union election. Upon his reelection, the incumbent terminated Tyra's employment.

The trial court determined that Tyra's claim for wrongful discharge was preempted by the LMRDA. The Court of Appeal affirmed and held that allowing Tyra to pursue a state-law claim for wrongful discharge would interfere with the effective administration of national labor policy. Thus, the court held that the LMRDA preempts wrongful discharge claims brought against unions or their officials by former policymaking or confidential employees.

Despite a footnote in the court's opinion in *Tyra* and the language in the concurring opinion questioning the continuing vitality of *Cunningham v. Retail Clerks Union, Local 1222, supra,* the California Court of Appeal left open the question whether the LMRDA precludes a non-policymaking union employee from bringing a state-law claim for wrongful discharge. *See Screen Extras Guild, Inc. v. Superior Court,* 51 Cal.3d 1017, 275 Cal. Rptr. 395, 800 P.2d 873 (1990).

■ Here, there has been no contention or showing that Lyons was instrumental in establishing the Union's administrative policies or that her firing was related to her views on union policy. The Union's stated reason for firing Lyons, who was a secretary and bookkeeper, was her alleged insubordination and poor job performance. Lyons' claims implicate no legitimate union policy and do not threaten any federal interest in ensuring democratic union governance. Thus, permitting Lyons to pursue her claims would neither impermissibly interfere with the ability of democratically elected Union officials to respond to their mandate to govern, nor frustrate the effective administration of national labor policy.

Thus, we conclude that Lyons' breach of contract and promissory estoppel claims are not preempted by the federal labor laws.

## II.

The Union next contends that the trial court erred in submitting Forbis' claims against the Union to the jury. The Union maintains that, as a matter of law, it did not owe Forbis a fiduciary duty. The Union also

contends that Forbis' state-law claims against the Union for breach of fiduciary duty and breach of contract are preempted by the LMRDA because they require an interpretation of the Union's bylaws and constitution. We decline to address these contentions.

■ Contrary to its assertion, the Union did not raise these issues in the trial court. The Union's general denial, in its answer, of allegations that it owed a fiduciary duty to Forbis was insufficient to preserve the issue for appeal. *See Minto v. Lambert*, 870 P.2d 572 (Colo.App.1993).

■ Moreover, while the Union moved to dismiss "all the claims" against it in its motion to dismiss, the arguments pressed and cases cited in the motion addressed the question whether *Lyons'* claims were preempted, not whether *Forbis'* claims were preempted. Again, because the issue was not properly raised in the trial court, we decline to address it here. *See Messler v. Phillips*, 867 P.2d 128 (Colo.App.1993); *First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo.App.1990).

### III.

The Union's final contention is that the trial court erred in awarding attorney fees to Forbis pursuant to § 13–17–102. We do not agree.

Section 13–17–102(4), C.R.S. (1987 Repl. Vol. 6A) provides that:

> The court shall assess attorney fees if . . . it finds that an attorney or party brought or defended an action . . . that lacked substantial justification or that the action . . . was interposed for delay or harassment. . . . As used in this article, lacked substantial justification means substantially frivolous, substantially groundless, or substantially vexatious.

■ The determination whether attorney fees should be awarded is within the discretion of the trial court. Section 13–17–103, C.R.S. (1987 Repl.Vol. 6A); *see also Little v. Fellman*, 837 P.2d 197 (Colo.App. 1991). If a trial court's award of attorney fees is supported by the evidence, it will not

be disturbed on review. *Weber v. Wallace*, 789 P.2d 427 (Colo.App.1989).

The Union contends that the trial court's award of attorney fees to Forbis must be reversed because the court "failed to make sufficient findings" justifying such an award. We disagree.

■ In determining whether a claim or defense is substantially frivolous, groundless, or vexatious, a trial court must consider the factors set forth in § 13–17–103(1), C.R.S. (1987 Repl.Vol. 6A) and specify the reasons for the award. *Sullivan v. Lutz*, 827 P.2d 626 (Colo.App.1992). The court's findings must be sufficient to permit meaningful appellate review of the attorney fee award. *Board of County Commissioners v. Auslaender*, 745 P.2d 999 (Colo.1987).

■ Here, the trial court reviewed the parties' briefs, affidavits, and exhibits, and conducted an evidentiary hearing regarding Forbis' request for an award of his attorney fees.

Based on the evidence presented, the trial court found, with record support, that the Union pursued its claims against Forbis "because he agreed to testify for" Lyons, that there was "animosity" between Forbis and the Union, and that the Union's claims against Forbis were "vexatious."

The trial court's order indicates that the court properly considered evidence as to the pertinent statutory factors, and its findings are sufficiently explicit to permit review of its determination. *See Coldwell Banker Commercial Group, Inc. v. Hegge*, 770 P.2d 1297 (Colo.App.1988). Thus, we conclude that the trial court's findings were adequate and that its determination that the Union's claims against Forbis were substantially vexatious was amply supported by the evidence.

### IV.

In her cross-appeal, Lyons maintains that the trial court erred in denying her motion to amend the complaint to add a claim for defamation. We disagree.

On the last day of trial, after Lyons and the Union had completed their cases and rested, Lyons moved pursuant to C.R.C.P.

15(b) to amend her complaint to include a claim for defamation. The Union objected to the proposed amendment, and the court denied the motion.

Under C.R.C.P. 15(b), the amendment of pleadings to conform to the evidence is allowed only upon permission of the court. Amendments to add a new claim should be allowed only when there is no reasonable doubt that the issue raised by the proposed amendments has been intentionally and actually tried. *Real Equity Diversification v. Coville,* 744 P.2d 756 (Colo.App.1987). It is not enough that some evidence has been presented germane to the issue sought to be raised. *Clemann v. Bandimere,* 128 Colo. 24, 259 P.2d 614 (1953).

The decision whether to grant leave to amend lies within the trial court's sound discretion, and its ruling will not be disturbed on review absent a clear abuse of discretion. *Fedderson v. Goode,* 112 Colo. 38, 145 P.2d 981 (1944); *Gabel v. Jefferson County School District R–1,* 824 P.2d 26 (Colo.App.1991).

Here, the mere fact that some evidence which could support Lyons' defamation claim was introduced at trial is insufficient to show that this issue was tried by the consent of the parties. Thus, the trial court did not abuse its discretion in denying Lyons' motion to amend. *See Clemann v. Bandimere, supra; Gabel v. Jefferson County School District R–1, supra.*

V.

We also reject Lyons' contention that the trial court erred in denying her motion for an award of attorney fees.

In the absence of authorization by statute or contract, a prevailing party is generally not permitted to recover attorney fees in a contract or tort action. Such fees should not be awarded based on a contractual provision unless it plainly and unambiguously permits such an award. *Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990).

Here, Lyons did not point to any actual contract provision authorizing an award of attorney fees to the prevailing party in a lawsuit. In support of her motion for an award of attorney fees, however, Lyons claimed that the Union had adopted a "policy, practice or procedure" of paying fees incurred by its employees in pursuing grievances against the Union and that this policy was incorporated into her employment contract with the Union.

The evidence relied upon by Lyons is insufficient to establish that the parties' contract contained an express provision clearly and unambiguously permitting an award of attorney fees. *See Bunnett v. Smallwood, supra; Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974). Thus, the trial court did not err in denying Lyons' request for an award of attorney fees.

Contrary to Lyons' assertion, the jury's finding that there was an employment contract between Lyons and the Union did not require the trial court to find that the contract authorized Lyons to recover attorney fees.

The judgment is affirmed.

DAVIDSON, J., concurs.

MARQUEZ, J., dissents.

Judge MARQUEZ dissenting:

I respectfully dissent.

Because in my view the claims of plaintiff, Annette Y. Lyons, were preempted by the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 141, et seq. (1988), I would hold that the trial court erred in denying the motion to dismiss filed by defendant, Teamsters Local Union No. 961 (Union).

Section 301 of the LMRA, 29 U.S.C.A. § 185(a) (1988) provides, as pertinent here:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....

When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the

parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law. *Allis Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

The LMRA preempts state court jurisdiction in a dispute involving a collective bargaining agreement even if the plaintiff is not a union member. *Saunders v. Amoco Pipeline Co.,* 927 F.2d 1154 (10th Cir.1991).

Jurisdiction exists as long as the suit is for violation of a contract between a union and an employer even if neither party is a union or an employer. The only requirement under § 301 is that the suit be based on an alleged breach of contract between an employer and a labor organization and that resolution of the lawsuit is focused upon and governed by the terms of the contract. *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Committee,* 707 F.2d 1067 (9th Cir.1983).

As the majority notes, Lyons contends that she was promised that her employment was subject to the same terms and conditions as are contained in collective bargaining agreements between the Union and certain employers on behalf of the Union's membership. She filed her complaint alleging that the Union had terminated her without just cause and, as pertinent here, based her claims against the Union on breach of contract and promissory estoppel. The majority also acknowledges that Lyons seeks to enforce contract terms that were essentially borrowed from the Union's collective bargaining agreements.

Lyons' wrongful discharge claims arise out of conduct purportedly occurring during the course of her employment with the Union, thus requiring an analysis of what the collective bargaining agreements permitted. She alleged that she was an employee of the Union and believed that her employment with defendant was subject to, and that she was the beneficiary of, the terms and conditions of the agreement entered into by defendant on behalf of its membership, including, but not limited to, the provisions of the National Master Freight Agreement and the Western States Area Supplemental Agreement, as well as the Bylaws of Teamsters Local Union No. 961, and the Constitution of the Teamsters 23rd International Convention, and that she was terminated in violation of the policies and procedures of the Union.

She alleged she was terminated without good cause, without proper notice, and without procedural due process. She claimed that the then president of the Union informed her she would be entitled to certain rights set forth in the collective bargaining agreement and that she relied on those provisions relating to just cause for discharge.

Specifically, Lyons asserted that she was not given a warning letter as required by the Western States Area Supplemental Agreement and that her grievance was not processed. Thus, her claim of wrongful termination was based on the terms and conditions of the collective bargaining agreement.

The jury here was instructed that, in order to find a breach of the employment contract, it had to find that the Union had policies, practices, or procedures requiring corrective discipline prior to discharge; or requiring just cause to discharge; or affording a protest/grievance to the Union's employees and that the Union failed to comply with those policies, practices, or procedures. It was similarly instructed concerning Lyons' claim of promissory estoppel. The only evidence of such policies, practices, or procedures consisted of the collective bargaining agreements, copies of which were provided to the jury.

In my view, resolution of this claim depends upon the interpretation and application of the terms and provisions of the collective bargaining agreements. Section 301 jurisdiction is not dependent upon the parties to the suit, but rather, upon the nature or subject matter of the action. *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Committee, supra.*

Lyons has not alleged that she was discharged for refusing to engage in illegal conduct, *see Bloom v. General Truck Drivers Local 952,* 783 F.2d 1356 (9th Cir.1986); *Montoya v. Local Union III,* 755 P.2d 1221 (Colo.App.1988), that some state public policy is implicated, *see Martin Marietta Corp. v.*

*Lorenz,* 823 P.2d 100 (Colo.1992), or that there were grounds independent of any collective bargaining agreement. *See Ferris v. Bakery, Confectionery & Tobacco Union,* 867 P.2d 38 (Colo.App.1993); *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Committee, supra.*

Thus, I would conclude that Lyons' claims arise from the alleged breach of the terms of collective bargaining agreements and that state court jurisdiction is preempted by the LMRA.