Vern GABEL, Plaintiff–Appellant
and Cross–Appellee,

v.

JEFFERSON COUNTY SCHOOL DIS-
TRICT R–1 and Cherie A. Lyons, De-
fendants–Appellees and Cross–Appel-
lants.

No. 89CA1778.

Colorado Court of Appeals,
Div. V.

June 20, 1991.

Rehearing Denied Aug. 1, 1991.

Certiorari Denied Feb. 3, 1992.

Hornbein MacDonald Fattor and Hobbs P.C., Larry F. Hobbs and Rita Byrnes Kittle, Denver, for plaintiff-appellant and cross-appellee.

Caplan & Earnest, Gerald A. Caplan, Richard E. Bump and Allen P. Taggart, Boulder, for defendants-appellees and cross-appellants.

Opinion by Judge DAVIDSON.

Plaintiff, Vern Gabel, appeals from the judgment entered upon the directed verdicts in favor of defendants, Jefferson County School District R–1 and Cherie A. Lyons, on plaintiff's complaint seeking damages for violation of his due process rights and his right to free speech under the First Amendment. Plaintiff also appeals the trial court's denial of his motion to amend his pleadings to include a freedom of association claim. Defendants cross-appeal the portion of the court's order finding that certain speech was entitled to constitutional protection. We affirm.

When viewed in the light most favorable to plaintiff, *see Mahoney Marketing Corp. v. Sentry Builders of Colorado*, 697 P.2d 1139 (Colo.App.1985), the record reveals the following facts.

Plaintiff was an assistant principal at Golden Junior High School. In the summer of 1987, it was announced that the school would close after the 1987–88 school year, that the principal was leaving, and that defendant Lyons had been appointed as interim principal for this final year.

In August, plaintiff met with Ann Brady, a supervisor in the superintendent's office. Concerned that he had not been consulted about the changes, he complained to Brady about Lyons' appointment. Specifically, he questioned Lyons' qualifications and suggested that the appointment was "reverse discrimination" and that he might file a class action lawsuit. Although initially he suggested he might "sabotage" this appointment, he then assured Brady that he would not do so, but was considering a transfer to a different school.

The following spring, plaintiff was involved in three separate physical altercations with students. Lyons gave verbal warnings to plaintiff after the first incident. The second and third occurred two weeks later, on the same day. Immediately after the third, Lyons suspended plaintiff for two days with pay and told him not to discuss his suspension or his personal issues with the staff or the community during the investigation of the incidents.

After the investigation, Lyons filed a letter of reprimand concerning plaintiff's use of physical force with students. At the end of the school year, Lyons filed a critical performance appraisal of plaintiff. Plaintiff received no additional discipline and, after the school's closure, became assistant principal at another school in the district.

Based on the two-day suspension, the letter of reprimand, and the negative performance evaluation, plaintiff served a complaint upon defendants alleging violation of his due process rights and retaliation in violation of his rights secured by the First and Fourteenth Amendments and enforceable pursuant to 42 U.S.C. § 1983

(1988). The trial court granted defendants' motion for directed verdict at the close of plaintiff's case, and this appeal followed.

## I.

Plaintiff first contends that the trial court erred in granting to defendants a directed verdict on plaintiff's due process claim. Specifically, plaintiff argues that he has a property interest pursuant to the Teacher Employment, Dismissal, and Tenure Act of 1967, § 22–63–101, et seq., C.R.S. (1988 Repl. Vol. 9) (the Teacher Tenure Act), and that his suspension with pay, which occurred without a hearing, deprived him of this property interest without due process. The trial court, assuming that plaintiff had such a property interest, found that his suspension with pay was a *de minimis* deprivation and, thus, did not invoke due process protection. We agree with the trial court.

In determining whether the plaintiff has been denied due process because of an alleged deprivation of property, we must initially determine whether plaintiff has a property interest in the retention of his employment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Here, plaintiff claims a property interest in continued employment as a tenured teacher, and as did the trial court, we will assume this to be correct. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

However, not every ostensible deprivation of property requires due process protection. In general, those property deprivations that can be characterized as *de minimis* are beyond the scope of the due process clause. *See Goss v. Lopez, supra.*

Plaintiff, however, relying on dicta in *Bratton v. Dice*, 93 Colo. 593, 27 P.2d 1028 (1933) and *City & County of Denver v. District Court*, 196 Colo. 134, 582 P.2d 678 (1978), argues that Colorado has explicitly rejected a *de minimis* approach to deprivation of property rights. Rather, he argues that these cases hold that *any* deprivation of a property right invokes due process concerns. This reliance is misplaced.

Contrary to plaintiff's suggestion, both of these cases involved the infringement of substantial property rights, such as the loss of pay, in *Bratton*, and the demotion in rank, and subsequent reduction in pay and benefits, in *City & County of Denver. See City and County of Denver, supra* (civil service employees have vested property rights in the ranks they hold, including such valuable rights as "job security, seniority rights, disability and sick benefits, [and] pension rights").

Furthermore, our supreme court has explicitly stated that "not every deprivation triggers the protections of due process. Due Process applies only to deprivation of *significant* 'property' interests." *Bankers Trust Co. v. El Paso Pre–Cast Co.*, 192 Colo. 468, 560 P.2d 457 (1977) (emphasis added). Thus, we do not agree with plaintiff that our courts have rejected the *de minimis* approach.

Here, if property deprivation can be placed on a sliding scale, the injury to plaintiff is unmistakably at the very bottom. Plaintiff was suspended for only two days, with full pay, without interruption of job security, seniority rights, or other benefits such as sick or disability pay.

Although we agree with plaintiff that, in certain circumstances, suspension of a tenured teacher with pay may constitute a significant infringement of a property interest, *see* § 22–63–117(3) C.R.S. (1988 Repl.Vol. 9), in our view, the limited suspension here did not deprive plaintiff of any measurable property interest. *See Pitts v. Board of Education*, 869 F.2d 555 (10th Cir.1989) (two-day suspension with pay did not deprive tenured teacher of measurable property interest and thus does not implicate due process concerns); *Hardiman v. Jefferson County Board of Education*, 709 F.2d 635 (11th Cir.1983) (nine-day suspension with pay of tenured teacher involved *de minimis* property interest). *See also Gorham v. City of Kansas City*, 225 Kan. 369, 590 P.2d 1051 (1979).

Therefore, because we conclude that plaintiff's two-day suspension with pay involved, at most, a *de minimis* deprivation

of a property right, due process protections are not implicated. *See Goss v. Lopez, supra.* Accordingly, the trial court did not err in dismissing this claim.

## II.

Plaintiff next contends that the trial court erred in granting defendants' motion for directed verdict on his freedom of speech claim. Specifically, plaintiff alleges that Lyons' disciplinary actions against him were taken in retaliation for his comments about her to Brady. This retaliation, plaintiff argues, was an infringement upon his right to free speech because all of his comments to Brady involved constitutionally protected speech. The trial court, however, found that only plaintiff's comment about reverse discrimination was a matter of public concern, and thus, it was the only protected speech. The court then found that, since there was no evidence that Lyons knew about this comment, she could not have retaliated against plaintiff for that reason. Because we hold that plaintiff's speech was not constitutionally protected, we affirm the decision of the trial court.

▆ Public employment cannot be conditioned on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). To determine whether in fact plaintiff's constitutional rights have been violated by the defendants' conduct, we must invoke the four part test articulated in *Kemp v. State Board of Agriculture,* 803 P.2d 498 (Colo.1990).

According to the *Kemp* test, the court must first determine whether the speech at issue is constitutionally protected. Specifically,

"[The employee] must show that [his] speech touch[es] upon a matter of public concern.... Second, if the speech is a matter of public concern, the burden shifts to the state to show that its interests outweigh the employee's interest, as a citizen, in commenting upon matter of public concern.... Third, if the state shows that the [balance] is weighed in its

favor, it is unnecessary to go further because the state has met its burden of showing that it terminated the employee or denied [him] a benefit for legislative [sic] reasons."

If the speech is found to be constitutionally protected, then:

"[T]he employee must show that the protected activity was a substantial or motivating factor in the school's decision to deny the benefit.... Finally, the school may still defeat the employee's claim if it can show that it would have reached the same decision even in the absence of the protected conduct."

▆ Whether the speech is constitutionally protected is a question of law, *see Kemp v. State Board of Agriculture, supra,* and, thus, is subject to our independent examination in light of the record evidence. Because we determine plaintiff's speech was not constitutionally protected, we do not reach the issue of the sufficiency of the evidence on defendants' motivation for the disciplinary action.

Under the *Kemp* test, plaintiff first must show, by a preponderance of the evidence, that his speech touched on "matters of public concern." That is, the speech, must be "fairly considered as relating to any matter of political, social, or other concern to the community...." *Connick v. Myers, supra; see Kemp v. State Board of Agriculture, supra.*

In determining whether the speech is a matter of public concern, the court must conduct a particularized examination of each statement or activity which the employee claims provided the actual motivation for the disciplinary action to see whether it "touches upon a matter of public concern." *Johnson v. Lincoln University,* 776 F.2d 443 (3rd Cir.1985); *see Kurtz v. Vickrey,* 855 F.2d 723 (11th Cir.1988).

Here, after learning that the school's long-time principal was leaving and was being replaced by Lyons, plaintiff went to the assistant superintendent's office to discuss the situation. At this meeting, plaintiff complained that he was unhappy with Lyons' appointment and specified that he

was concerned about her lack of experience. Although he disclaimed any desire for the principal's job, he was concerned that he had not been consulted and had been overlooked in the decision-making. He "felt it was reverse discrimination," and told Brady he might file a class action lawsuit.

Plaintiff's assertion to the contrary notwithstanding, we consider plaintiff's complaint that he had been overlooked and his criticism of Lyons' qualifications only to be expressions of concern as to the administration of the school. As such, this speech is "most accurately characterized as an employee grievance concerning internal [school] policy." *Kemp v. State Board of Agriculture, supra.*

As the Supreme Court stated in *Connick v. Myers:*

"To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to run as a roundtable for employee complaints over internal office affairs."

█ However, although we do not regard that speech as involving matters of public concern, plaintiff's comments also included allegations of reverse discrimination within the school district. And, because allegations of discrimination by a government employer are "a matter inherently of public concern," *Connick v. Myers, supra,* we agree with the trial court that this speech constituted a matter about "which the community would be understandably concerned." *Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987).

█ Thus, because plaintiff's speech did involve at least one issue which touched on a matter of public concern, we must proceed to balance plaintiff's interest in the speech against the state's interest "in the effective and efficient fulfillment of its responsibilities to the public." *Kemp v. State Board of Agriculture, supra.*

In balancing these respective interests, all of plaintiff's speech must be examined. Thus, if an employee's speech contains only some elements that relate to matters of public concern, the speech should not be separated into protected and unprotected categories for the purpose of the balancing test. Rather, the plaintiff's interest in the speech as a whole should be balanced against the employer's interests. *Kemp v. State Board of Agriculture, supra.*

Also, the contested statements should not be considered in a vacuum. Instead, the court must consider the manner, time, and place of the employee's expression and the context in which the dispute arose. *Kemp v. State Board of Agriculture, supra.* Relevant to this consideration is whether the speech impairs discipline by superiors or threatens to harm co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or whether the speech impacts the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Kemp v. State Board of Agriculture, supra.*

Here, we find plaintiff's interest in the protection of his speech to be minimal. Importantly, his claim of reverse discrimination appears as a tangential comment included in a group of broader statements which reflected plaintiff's personal concern over the administration of the school. And, "[a]n employee cannot invoke the first amendment's protection by simply using the term 'discrimination.' [Instead, t]here must be some attempt to inform the public of discriminatory practices rather than a motive primarily aimed at simply 'gathering ammunition for another round of controversy with [his] superiors.'" *Kemp v. State Board of Agriculture, supra.*

Plaintiff's comments were entirely concerned with what *he* wanted to do, rather

than to "[expose] an alleged [school] discrimination problem to the public.... In other words, the sole motivating factor for [his speech] was to further [his] own cause, rather than a larger, more publicly important problem." *Kemp v. State Board of Agriculture, supra.*

This conclusion is further evinced by the fact that plaintiff made no attempt to inform the public of any alleged discriminatory practices by the school. Although plaintiff alleges that he wanted to discuss personnel matters with others, but could not because of Lyons' "gag orders," plaintiff specifically testified that: "I didn't want to talk to the teachers, I didn't want to talk to Mr. Wertz, I didn't want to talk to anybody. I [just] wanted to go talk to Mrs. Brady and make sense out of it." In addition, plaintiff did not present any evidence that he made any attempt, through the administrative process or otherwise, to complain about this alleged discrimination before these so-called "gag orders" were issued.

Furthermore, although plaintiff contends that he spoke out concerning Lyons' appointment because he was upset that an experienced principal was being replaced by an inexperienced one, and because he was concerned about staff morale, it is clear from the content and context of plaintiff's speech that it focused on his own personal view of the situation. At trial, Lyons testified that plaintiff told her that: "I don't think you belong in the principalship and you ought to be home raising your kids." According to the record, this statement was also repeated to another administrator in the superintendent's office. In addition, there was also testimony that plaintiff had made a racially motivated remark. And, "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills,* 781 F.2d 1508 (11th Cir.1986).

On the other hand, the record indicates that the school district's interest in the efficient and effective fulfillment of its responsibilities to the public was threatened. Brady testified, and plaintiff admits, that in the conversation with Brady, plaintiff indicated that he could sabotage Lyons' appointment. Furthermore, in the fall of the school year, Lyons reported difficulties with plaintiff to Brady, and Brady commented to Lyons that she hoped that plaintiff was not sabotaging Lyons' work. Brady also testified that comments against Lyons "impact the teamwork, [and] the closeness that must be developed in an administration team. Comments like that can be very injurious to that type of relationship."

"Private expression ... in some situations bring additional factors to the [balancing test]. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered."

*Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

Thus, in balancing plaintiff's interest in his speech, which focused on personal, rather than public concerns, against defendants' interest in the efficient and effective functioning of the school system, we conclude that defendants' interest far outweighs that of plaintiff's. Therefore, plaintiff's speech is not entitled to constitutional protection, and the trial court did not err in directing a verdict in defendants' favor.

### III.

■ Finally, plaintiff contends that the trial court erred in denying his motion to amend his pleadings pursuant to C.R.C.P. 15(b) to include a violation of his right to freedom of association. Again, we disagree.

After the conclusion of plaintiff's case-in-chief and during the hearing on defendants' motion for a directed verdict, plaintiff moved to include a freedom of association claim against defendants. Plaintiff contended that the evidence that Lyons ordered him not to discuss his complaints about her with others supports this claim. The trial court denied the motion, finding that this claim was not pled, nor was the case tried on this theory, and we agree.

A motion under C.R.C.P. 15(b) to amend the pleadings to conform to the proof should be allowed "only in cases where no reasonable doubt remains that the issue raised by the amendment has been intentionally and actually tried. It is not enough that some evidence has been received germane to the issue sought to be raised." *Clemann v. Bandimere*, 128 Colo. 24, 259 P.2d 614 (1953); *Real Equity Diversification v. Coville*, 744 P.2d 756 (Colo.App.1987). And, absent an abuse of discretion, the trial court's denial of a motion pursuant to C.R.C.P. 15 will not be disturbed on appeal. *Fitzgerald v. Edelen*, 623 P.2d 418 (Colo.App.1980).

Here, the record reveals that plaintiff's freedom of association claim was a last-minute afterthought by plaintiff. The mere fact that some evidence which could support this claim was introduced at trial is insufficient to show that this issue was tried by the consent of the parties. *See Clemann v. Bandimere, supra.* Thus, we find no error.

Judgment affirmed.

STERNBERG, C.J., and NEY, J., concur.