**Michael BISHOP, Complainant–Appellant,**

v.

**DEPARTMENT OF INSTITUTIONS, DIVISION OF YOUTH SERVICES, Respondent–Appellee,**

and

**The State Personnel Board of the State of Colorado, Appellee.**

**No. 91CA0430.**

Colorado Court of Appeals, Div. V.

April 23, 1992.

Stephen W. Miller, Golden, for complainant-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Stacy L. Worthington, Asst. Atty. Gen., Denver, for respondent-appellee and appellee.

Opinion by Judge ROTHENBERG.

Complainant, Michael Bishop, appeals from the final order of the Colorado State Personnel Board (Board) terminating his employment with the Department of Institutions. We affirm.

From 1986 through his termination in 1990, Bishop was a client manager with the Department of Institutions, Division of Youth Services (DYS).

In June 1989, one of Bishop's clients escaped from a secure DYS facility and remained as an escapee for the next six months. During that time, Bishop met with the youth between three and eight times. At those meetings, Bishop encouraged the youth to turn himself in. However, he also told the youth that if he remained on escape status for more than a year, his name would be removed from the DYS' rolls, and the case would be dropped. Bishop also told the youth not to tell anyone about their meetings, and he gave the youth his birth certificate and social security card which Bishop had obtained from the DYS, so the youth could get a job.

During that period, Bishop did not notify the police or any DYS officials about any of the contacts. Instead, at the weekly staff meetings and monthly one-on-one meetings, Bishop merely stated that the youth was still on escape status.

When it learned about Bishop's actions, the DYS Central Region Director suspended Bishop. At a predisciplinary meeting, Bishop admitted meeting with the youth but refused to answer questions about whether he had provided the youth with a birth certificate and social security card.

The director determined that Bishop's conduct in meeting with the client and providing him with the documentation violated: 1) § 18–8–105, C.R.S. (1986 Repl.Vol. 8B) (accessory to crime); 2) § 18–8–201, C.R.S. (1986 Repl.Vol. 8B) (aiding escape); 3) statutory provision now codified as § 18–6–601, C.R.S. (1986 Repl.Vol. 8B) (aiding runaway child); 4) the Department of Institutions' Code of Ethics; and 5) the DYS Client Management Implementation Manual. He also determined that the violations placed the DYS and the escaped youth in jeopardy. Thus, he concluded that termination was appropriate.

Bishop appealed his termination to the Board. After a hearing, the hearing officer issued an initial decision setting forth detailed findings of fact and conclusions of law. She found that, although the DYS has no specific written policy prohibiting meetings between client managers and escapees, a number of Bishop's actions constituted willful misconduct. These actions included meeting with the youth several times; intentionally concealing all of those meetings from his supervisors; providing the youth with agency services while he was on escape status, including counseling; providing the youth with identification, i.e., birth certificate and social security card; and advising the youth (erroneously) that if the youth waited a year without

turning himself in, the youth's name would be removed from the DYS roster. Thus, she concluded that termination was appropriate.

The Board accepted the hearing officer's findings of fact and conclusions of law and affirmed the hearing officer's initial decision.

Section 24–50–125(1), C.R.S. (1988 Repl. Vol. 10B) provides, *inter alia,* that a certified employee within the state personnel system may be dismissed for willful misconduct. *See also* Colo. Const. art. XII, § 13(8).

State Personnel Board Rule R8–3–3(A)(C)(2), 4 Code Colo.Reg. 801–1 (1986), states:

> Willful misconduct ... *includes but is not limited to* willful violation of these Rules. A violation of the rules of the agency of employment may also constitute willful misconduct. Discovery after hiring that the employee was subject to rejection for any of the reasons in P5–4–2(D)(E)(G) is also grounds for disciplinary action. (emphasis added)

Bishop contends that dismissal of an employee for willful misconduct requires that the employee violate a specific rule promulgated by the employing agency. Here, it is undisputed that no written or stated policy requires client managers to report each telephone or other contact with escaped youths, and no policy exists prohibiting client managers from meeting with youths on escaped status.

According to Bishop, because of the absence of such written or stated policy, the Board's action in terminating him for willful misconduct was contrary to law, arbitrary and capricious, and in excess of its jurisdiction. The Board, however, contends that willful misconduct is not limited to a violation of written or stated rules; rather, it includes violations of generally accepted standards of performance, violations of the general provisions of the Client Management Implementation Manual, and violations of Colorado statutes. We agree with the Board.

The Board's interpretation of its own rules is generally entitled to great weight unless it is plainly erroneous or inconsistent with such rule or the underlying statute. *Ornelas v. Department of Institutions,* 804 P.2d 235 (Colo.App.1990). An action of the state personnel board will be upheld if there is sufficient evidence in the record to support it. *Beardsley v. Colorado State University,* 746 P.2d 1350 (Colo.App.1987).

We conclude that the Board did not err in interpreting Rule R8–3–3, and we agree with the hearing officer that violations of the general standards of the manual and the Code of Ethics may be sufficient to constitute willful misconduct. In reaching this conclusion, we reject Bishop's contention that a violation of a specific rule is required. It is unrealistic to expect that the manual will list every conceivable infraction that constitutes willful misconduct. The general provisions provide sufficient guidance as to what conduct is appropriate.

The general provisions of the manual state that a client manager is required:

> To uphold the highest possible professional correctional standards in all programs and service areas.
>
> . . . .
>
> To secure the safety and security of youth, staff, and the community according to the laws of the State of Colorado.

Similarly, the Code of Ethics requires that Executive Branch employees, such as Bishop, demonstrate the highest standards of professional integrity, truthfulness, and honesty, and not engage in any business that has an adverse effect on the confidence of the public in the integrity of government.

In addition to these general provisions, § 24–50–116, C.R.S., (1988 Repl.Vol. 10B), which pertains to state employees provides:

> Each employee shall perform his duties and conduct himself in accordance with generally accepted standards and with specific standards prescribed by law, rule of the board, or any appointing authority.

According to the testimony at the hearing, none of the other client managers had

ever met even once with a youth on escape status. Several client managers testified that they would not meet with an escaped youth and would report any request for a meeting to their supervisors. Additionally, the client managers and their supervisor testified that, at monthly meetings, the client managers would identify problems they have with particular juveniles and would discuss issues concerning juveniles on escape status, including phone contacts.

Based on this testimony, the hearing officer found that the accepted practice in Bishop's office included the expectation that client managers would bring significant matters involving their clients to the attention of the supervisor in monthly private meetings, if not before.

Here, in regard to Bishop's activities with the escaped youth, the hearing officer stated:

> [Bishop] willfully concealed from his superiors the fact that he was engaged in a series of meetings with a youth on escape status. He would not have concealed these meetings throughout the six-month long period in which they occurred, through the multitude of opportunities when mentioning the meetings would have occurred to a reasonable client manager, unless it was his intent to conceal them from his superiors.

Also, the hearing officer found that Bishop's advice to the youth about not turning himself in was erroneous, and ultimately resulted in harm to the youth and the Division of Youth Services. As the hearing officer stated:

> The youth had been picked up for a curfew violation. A routine check turned up the outstanding warrant for his arrest for the escape. *As a result of these events, he was now facing felony charges as an adult.* Had the youth not escaped, or *had he turned himself in soon after his escape, his criminal record would have been subject to protective rules regarding juveniles.*
> [Bishop] knew or should have known that he was putting both himself, his juvenile client, and the DYS at risk. DYS credibility with the courts and district attor-

ney's office did suffer as a result of the investigation that ensued. (emphasis added)

Under these circumstances, we find record support for the conclusions that Bishop's conduct violated the Code of Ethics, the general provisions in the Client Management Implementation Manual, and the established standards in his office, and that the violations were a sufficient basis upon which the Board could find that Bishop had engaged in willful misconduct.

Accordingly, we find no error in the Board's interpretation of its rule or its decision affirming Bishop's termination.

The order of the Colorado State Personnel Board is affirmed.

PLANK and DAVIDSON, JJ., concur.