Linda **BARRETT**, Complainant–Appellant,

v.

**UNIVERSITY OF COLORADO HEALTH SCIENCES CENTER and State Personnel Board, State of Colorado, Respondents–Appellees.**

No. 92CA0061.

Colorado Court of Appeals,
Div. V.

March 11, 1993.

Law Offices of Ronald E. Gregson, Ronald E. Gregson, Hugh S. Pixler, Denver, for complainant-appellant.

Daniel J. Wilkerson, Denver, for respondent-appellee University of Colorado Health Sciences Center.

No appearance for respondent-appellee State Personnel Bd.

Opinion by Judge BRIGGS.

Complainant, Linda Barrett, appeals the ruling of the Colorado State Personnel Board (Board) affirming the hearing officer's decision that complainant had committed "willful misconduct" in violation of Department of Personnel Board Rule 8–3–3(A)(C)(2), 4 Code Colo.Reg. 801–1 (effective January 1, 1986), and imposing a three-month demotion within her department. We affirm.

The complainant holds a supervisory position with the Department of Communications at University Hospital. Her duties include conducting initial interviews of job applicants. Her supervisor makes the final hiring decision.

In early 1991, complainant's supervisor delivered to her a notice of a meeting to discuss her "potentially discriminatory remarks on two occasions." The first incident involved a telephone conversation with the supervisor after the complainant had interviewed an applicant from the Human Resources Department for a vacancy. The supervisor alleged the complainant stated, "I like working with the Human Resources Department, they don't send you all black applicants like the State."

The second incident occurred later that week after the complainant had interviewed another applicant. The supervisor asserted that while they were discussing the qualifications of the applicant the complainant said: "He's all right, but he's black."

At a Department of Personnel Board Rule 8–3–3(D)(1), 4 Code Colo.Reg. 801–1 (effective July 1, 1989), meeting conducted by the "delegated appointing authority," the complainant admitted making statements similar to those alleged by the supervisor, but denied making them in the asserted context and with the precise language and connotation alleged. With regard to the first statement the complainant contended she made no comparison between the State and University Hospital, and had no basis for doing so because she had only one referral from University Hospital. She stated that she merely told her supervisor that the State refers mostly black applicants, and that was a true statement. With regard to the second statement the complainant claimed she said the applicant was "all right, and he's a black male." The complainant also denied having any intent to discriminate on the basis of race.

The delegated appointing authority found that the supervisor's version of the conversations was the more credible and that the remarks were intended to discriminate. The discipline imposed was a three-month, one-step disciplinary demotion.

Upon administrative appeal the hearing officer made similar findings, including a finding that complainant intended to disparage applicant qualifications solely on the basis of race, but concluded: "[T]he remarks made by the complainant were not made with the intent of taking or causing an immediate personnel action to discrimi-

nate against an individual applicant on the basis of race." The hearing officer determined that the remarks constituted willful misconduct, for which appropriate disciplinary action had been imposed.

The Board unanimously voted to affirm the decision, and this appeal followed.

## I.

## A.

The complainant first contends the Board erred in adopting the findings of fact of the hearing officer. She argues the remarks as they were found to have been made by the hearing officer are unsupported by the record and that the hearing officer erroneously placed the burden of proof on her to prove that she did not make the statements as alleged by the supervisor. We disagree.

■ Section 24–4–105(15)(b), C.R.S. (1988 Repl.Vol. 10A) provides generally that the Board may not disturb the hearing officer's findings of evidentiary fact unless contrary to the weight of evidence. Findings of evidentiary fact involve the raw, historical data underlying the controversy. *deKoevend v. Board of Education,* 688 P.2d 219 (Colo.1984). If there is conflicting testimony, the credibility of witnesses and the weight to be given their testimony is within the province of the administrative hearing officer. *Charnes v. Lobato,* 743 P.2d 27 (Colo.1987).

■ Here, the hearing officer was presented with the conflicting testimony. The hearing officer's decision includes an extensive analysis of the factors she considered in weighing the credibility of the two witnesses. Contrary to the complainant's contention, the hearing officer's reference to complainant's failure to put on any evidence of a motive to fabricate the remarks was not a misallocation of the burden of proof. The written findings reflect that this lack of evidence was merely one factor considered in resolving credibility. The hearing officer concludes her detailed analysis with the finding that University Hospital met its burden of proof by a preponderance of the evidence. The Board therefore did not err in adopting the hearing officer's findings.

## B.

The complainant's next contention is that the Board erred in adopting the hearing officer's conclusion that these statements constituted "willful misconduct." She argues that these remarks were not made in violation of any specific rules or standards and therefore cannot constitute "willful misconduct." We disagree.

■ The determination of whether particular conduct constitutes "willful misconduct" is a finding of ultimate fact. *See generally deKoevend v. Board of Education, supra.* As such, it may be disturbed on appellate review only if it is unsupported by any competent evidence or is based on an incorrect legal conclusion applied to the underlying facts. *See Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (Colo. 1978); *Bishop v. Department of Institutions,* 831 P.2d 506 (Colo.App.1992).

Also, the Board's interpretation of its own rules is entitled to deference unless it is plainly erroneous or inconsistent with such rule or the underlying statute. *Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985); *Bishop v. Department of Institutions, supra.*

The hearing officer concluded that the intent to disparage qualifications on the basis of race is a sufficient showing of willful misconduct for the disciplinary action to stand. In the circumstances presented here, we agree.

The hiring and employment policy of the Health Sciences Center adopted by University Hospital provides:

It is the continuing policy and commitment of the University of Colorado Health Sciences Center to provide equal opportunity for employment to all job applicants, for the advancement of all employees and for the education of all students, without discrimination with regard to race, religion, [or] sex....

Health Sciences Center, but not University Hospital, has the following printed on its letterhead: "The University of Colorado is

an equal opportunity/affirmative action employer." The complainant had experience working with the University Hospital's Human Resources Department and the Health Sciences Center's Personnel Office.

Department of Personnel Board Rule 8–3–3(A)(C)(2), 4 Code Colo.Reg. 801–1 (effective January 1, 1986), states in relevant part:

Willful misconduct ... *includes but is not limited to* willful violation of these Rules. A violation of the rules of the agency of employment may also constitute willful misconduct. (emphasis supplied)

Section 24–50–116, C.R.S. (1988 Repl.Vol. 10B) of the State Personnel System Act further provides:

Each employee shall perform his duties and conduct himself in accordance with generally accepted standards and with specific standards prescribed by law, rule of the board, or any appointing authority.

■ Here, it is undisputed that no written or stated policy specifically prohibited complainant from making the statements at issue. A finding of "willful misconduct," however, is not limited to a violation of specific rules or standards. *Bishop v. Department of Institutions, supra.*

Also, in the context of construing the phrase "willful misconduct" in an unemployment compensation case, our supreme court in *Sayers v. American Janitorial Service, Inc.*, 162 Colo. 292, 425 P.2d 693 (1967) confirmed there need not be actual intent to wrong the employer. A reckless disregard of the employee's duty to his employer is sufficient.

■ The hearing officer found the complainant made the above remarks with the intent of disparaging the qualifications of the applicant pool and a particular applicant based upon race; that they were made at a time when complainant and her supervisor were conducting interviews of employment applicants; and that this conduct was clearly not in accordance with the spirit and intent of respondent's explicit policy

of nondiscrimination. Under these circumstances, the decision affirming the imposition of discipline is supported by competent evidence.

## II.

The complainant also asserts the disciplinary action violated her due process rights because the determination of "willful misconduct" was unconstitutionally vague as applied to her. She argues that because there were no specific standards prohibiting her conduct, the determination that she was found to have violated the spirit and intent of the policy is a subjective and arbitrary decision based upon the individual sensibilities of the hearing officer. We do not agree.

■ The essence of a vagueness challenge is that the law "fails to reasonably forewarn persons of ordinary intelligence of what is prohibited ... and lends itself to arbitrary and discriminatory enforcement because it fails to provide explicit standards for those who apply it." *City of Lakewood v. Colfax Unlimited Ass'n*, 634 P.2d 52, 59 (Colo.1981).

As the complainant argues, the phrase "willful misconduct" contained within Department of Personnel Board Rule 8–3–3 does not itself precisely proscribe complainant's conduct nor specifically enumerate standards by which it was measured. Such broad rules, however, which seek to prescribe and regulate a general level of professionalism or norms of conduct in accordance with generally accepted standards within a government agency or specific profession have been upheld against similar challenges. *See Davis v. Board of Psychologist Examiners*, 791 P.2d 1198 (Colo. App.1989); *Puzick v. City of Colorado Springs*, 680 P.2d 1283 (Colo.App.1983). As the court observed in *Puzick v. City of Colorado Springs, supra*, at 1286:

[I]t is not feasible or necessary for the Government to spell out in detail all the conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees includes 'catchall' clauses prohibiting em-

ployee 'misconduct,' or 'conduct unbecoming.'

██ The words "willful misconduct" should be given their common and ordinary meaning. *See Triad Painting Co. v. Blair,* 812 P.2d 638 (Colo.1991); *Eckley v. Colorado Real Estate Commission,* 752 P.2d 68 (Colo.1988). "Willful" means "governed by will without yielding to reason or without regard to reason." *Webster's Third New International Dictionary* 2617 (1986). "Misconduct" means "deliberate violation of a rule of law or standard of behavior especially by a government official." *Webster's Third New International Dictionary* 1443 (1986).

██ Here, the hearing officer's determination that complainant committed "willful misconduct" was not an arbitrary and subjective determination. It was based upon the long and clearly established policy of nondiscrimination within University Hospital. The alleged remarks, made in the course of discussing job applicants with her supervisor, constituted "willful misconduct" because, as the hearing officer found, it was in violation of the spirit and intent of clearly established policy and was not "appropriate demeanor and collaboration in professional personnel activities." We conclude that the standards guiding the hearing officer were sufficiently defined and her decision was not arbitrary or discriminatory. Thus, there was no violation of the complainant's right to due process. *See Bishop v. Department Of Institutions, supra.*

## III.

The complainant finally contends that the disciplinary action was imposed in violation of her right to free speech under the First Amendment and Colo. Const. art. II, § 10. We disagree that the remarks are constitutionally protected speech.

██ Public employment cannot be conditioned on a basis that infringes the employee's constitutionally protected interest in freedom of expression. *Gabel v. Jefferson County School District R–1,* 824 P.2d 26 (Colo.App.1991). The determina-

tion of whether the speech is constitutionally protected is a question of law subject to our independent examination in light of the record. *Gabel v. Jefferson County School District R–1, supra.* In making our determination we must balance "the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811, 817 (1968).

██ The Colorado Supreme Court in *Kemp v. State Board of Agriculture,* 803 P.2d 498 (Colo.1990) articulated a four-part test to determine whether an employee's constitutional rights have been violated by the employer's conduct. The threshold question in applying this balancing test is whether the complainant's speech may be fairly characterized as constituting speech on a matter of public concern. If it does not touch on a matter of public concern, we must end our inquiry and permit the government officials to "enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708, 719 (1983); *see Kemp v. State Board of Agriculture, supra.*

██ The determination of whether the complainant's speech touches a matter of public concern rests on a particularized examination of each statement to determine whether it can be fairly considered as relating to any matter of political, social, or other concern to the community. *Gabel v. Jefferson County School District R–1, supra.* This must be determined by analyzing the content, form, and context of the statements, in conjunction with the motivation or "point" of the statements as revealed by the whole record. *Kemp v. State Board of Agriculture, supra.*

██ The complainant asserts that the interpretation of these remarks as an expression of intent to disparage based upon race necessarily means that these remarks

touch on a matter of public concern. We disagree.

Speech which touches on a matter of public concern includes that which is directed toward policies pertaining to discrimination or which tends or seeks to expose discriminatory practices. It does not include statements which, as here, merely reflect the possible racial bias of an employee made in the context of the employer's hiring process. *See Connick v. Myers, supra; Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Kemp v. State Board of Agriculture, supra.* The complainant's statements are therefore not constitutionally protected from her employer's enforcement of nondiscriminatory hiring policies. *See Gabel v. Jefferson County School District R–1, supra; Kemp v. State Board of Agriculture, supra.*

The Board's decision is affirmed.

RULAND and ROTHENBERG, JJ., concur.