Christopher S. COTTER,
Plaintiff–Appellant,

v.

**BOARD OF TRUSTEES OF the UNIVER-SITY OF NORTHERN COLORADO, in their official capacities, and Roger A. Kovar, in his official capacity as Dean of the University of Northern Colorado, and in his individual capacity, Defen-dants–Appellees.**

No. 97CA1028.

Colorado Court of Appeals,
Div. I.

Dec. 10, 1998.

MurrayKittle, P.C., Rita Byrnes Kittle, Denver, Colorado; Lynn Palma & Associates, Lynn Palma, Denver, Colorado, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jack M. Wesoky, Senior Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

Plaintiff, Christopher S. Cotter, appeals the summary judgment entered in favor of defendant, Board of Trustees of the University of Northern Colorado (University). We reverse.

Cotter filed this action under 42 U.S.C. §1983 (1994) alleging that his First Amendment rights of free speech and association were violated when he was denied promotion and tenure at the University of Northern Colorado in retaliation for speaking out against University officials and for his association with another faculty member.

Thereafter, the University moved for summary judgment. The trial court granted the University's motion, concluding that Cotter's speech did not involve matters of public concern.

## I. Freedom of Speech

Cotter maintains that summary judgment was improper because his speech touched on matters of public concern and his association with a fellow colleague was protected under the First Amendment. We agree.

In reviewing a public employee's First Amendment retaliation claim, we apply the four-step test derived from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). *See also Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1989), *modified on other grounds*, 928 F.2d 920 (10th Cir.1991) (en banc), *cert. denied*, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991); *Kemp v. State Board of Agriculture*, 803 P.2d 498 (Colo.1990).

The first two steps present legal questions as to whether the expression at issue is subject to the protection of the First Amendment. These questions of law are resolved by the court and are reviewed *de novo* on appeal. *Melton v. City of Oklahoma City, supra; Kemp v. State Board of Agriculture, supra.*

The court first must determine whether the employee's speech can be fairly characterized as constituting speech on a matter of public concern. If it can be so characterized, the court then must balance the employee's interest as a citizen in commenting upon matters of public concern against the interest of the state as an employer in promoting the efficiency of the public service it performs through its employees. *Gardetto v. Mason*, 100 F.3d 803 (10th Cir.1996). *See Pickering v. Board of Education, supra; Connick v. Myers, supra.*

The third and fourth steps derived from *Pickering* concern causation and involve questions of fact to be resolved by the factfinder. *Melton v. City of Oklahoma City, supra; Gabel v. Jefferson County School District R–1*, 824 P.2d 26 (Colo.App.1991).

In the third step, the factfinder must determine whether the employee's interest outweighs the employer's interest, in which case the employee must then prove by a preponderance of the evidence that the protected speech was a substantial factor or a motivating factor in the detrimental employment decision.

In the fourth step, the burden shifts to the employer to convince the factfinder by a preponderance of the evidence that the employer would have reached the same decision, even absent the protected conduct. *Gardetto v. Mason, supra. See Pickering v. Board of Education, supra; Connick v. Myers, supra.*

### A. Public Concern

Whether speech touches on a matter of public concern requires an examination of each statement to determine whether it relates to any matter of political, social, or other community concern. *Connick v. Myers, supra; Kemp v. State Board of Agriculture, supra.* This is done by analyzing the content, form, and context of the statements in conjunction with the motivation or point of the statements as revealed by the whole record. *Connick v. Myers, supra; Kemp v. State Board of Agriculture, supra; Barrett v. University of Colorado Health Sciences Center*, 851 P.2d 258 (Colo.App.1993).

Speech concerning the use of public funds generally touches on a matter of

public concern. *Gardetto v. Mason, supra.* Speech which discloses evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matter of public import. *Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988). In contrast, the First Amendment does not protect criticisms of internal management decisions made by public employees. *Gardetto v. Mason, supra; Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App.1994).

▮ Importantly, here, Cotter not only raised general issues of mismanagement and misappropriation of funds by the University's Dean of Liberal Arts and Sciences (Dean), but he asserted that certain funds budgeted for the math and science departments were unaccounted for by the Dean. Following Cotter's statements, an investigation was conducted by an ad hoc committee which also identified a discrepancy between the money authorized for the Dean to distribute to the departments and the actual amounts the Dean had distributed.

We conclude that Cotter's allegations of malfeasance and impropriety concerning the use of public funds at a public university were not merely criticisms of internal management decisions, but touched on matters of public concern. Thus, they are protected by the First Amendment.

We reach a similar conclusion regarding Cotter's claims that the Dean abused the authority of his office by: (1) selecting and sending only his own proposal for possible grant money; and (2) making salary and promotion decisions in a manner that discriminated against his critics. Specifically, by alleging that the Dean was furthering his own financial interest rather than acting in the best interest of the University, Cotter was raising issues of financial impropriety by the Dean. Thus, Cotter's allegations that the Dean was using a public office to further private financial gain touched on a matter of public concern.

▮ Cotter's allegations of mismanagement of the University Computer Center also touched on a matter of public concern. The thrust of Cotter's claim was more than just that public funds were being wasted and more than a matter regarding the internal allocation of resources within the University. Rather, he claimed improprieties which financially impacted the University, including allegations that members of the University's computer center had usurped computer memory for their private entertainment and had unnecessarily expended public funds for additional memory, rather than properly managing the use of available memory.

▮ These allegations should be contrasted with Cotter's other claims of mismanagement by the Dean, which only may have resulted in the hiring of less qualified instructors for math classes. Even if true, such allegations raise internal management issues for the University and do not touch on a matter of public concern. *Gardetto v. Mason, supra.*

▮ Contrary to the University's contention, the fact that Cotter did not disseminate this information publicly, but selected a private forum in which to address these matters of public concern, does not invalidate the protections of the First Amendment. *See Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (teacher's complaints and criticism of school policies and practices communicated privately to principal held protected by First Amendment). *See also Conaway v. Smith, supra* (addressing incidents of alleged official misconduct privately with City Administrator still a matter of public concern and entitled to First Amendment protection).

▮ Nor does the mere fact that Cotter's statement may have been an "outgrowth of his personal dispute" prevent it from touching upon matters of public concern. *See Johnson v. Lincoln University,* 776 F.2d 443, 452 (3d Cir.1985).

In sum, while Cotter did have a personal interest in funding for his department and the selection of his grant proposal, we conclude that several of his statements, as set forth above, also touched on matters of public concern.

## B. Balancing Test

Because it concluded that no matters of public concern were involved, the trial court did not proceed to the balancing test. For purposes of judicial economy, we do so here.

In balancing Cotter's interests against the University's interests, the court must consider the time, place, and manner of the speech, and the context in which it arose. *Connick v. Myers, supra.*

■ First Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee. *Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986).

■ Here, the University did not show any disruption to its official functions or show ineffective performance by Cotter. His use of internal channels minimized the potential disruptive effect of the complaints and weighs in his favor. *See Conaway v. Smith, supra* (voicing complaints via private internal channels is less disruptive and tilts the balancing of interests in employee's favor). We thus conclude the balance weighs in favor of Cotter.

Given our conclusion that several of Cotter's statements satisfy the public concern requirement and the balancing test as a matter of law, we further conclude that it was error to grant summary judgment in favor of the University on these issues. Accordingly, the matter must be remanded to the trial court for further proceedings. As to the statements which satisfy the public concern requirement, there must be a determination by the factfinder whether the final two steps of the four-step test have been satisfied. *See Pickering v. Board of Education, supra; Connick v. Myers, supra.*

## II. Freedom of Association

Cotter also contends the trial court erred in granting summary judgment in favor of the University on his freedom of association claim. Because we conclude that Cotter's right of freedom of association is indistinguishable from his right to free speech, we disagree.

■ The First Amendment protects the freedom of association in two distinct senses. In one sense, freedom of association is a fundamental element of personal liberty which prohibits undue intrusion by the State into one's choice to enter into and maintain certain intimate relationships.

■ The right of association is also viewed as an indispensable means of preserving other individual liberties protected by the First Amendment including free speech, assembly, petition for the redress of grievances, and the exercise of religion. *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

■ Certain intimate relationships have been protected under the First Amendment. They have included family relationships like marriage, childbirth, and raising children. *Roberts v. United States Jaycees, supra.* But, the United States Supreme Court has not yet further expanded the scope of the protection to include friendships or professional relationships and Cotter has not alleged any facts that persuade us to expand that scope here. We therefore conclude that Cotter's relationship with his colleague is not protected under the freedom of association clause of the First Amendment.

Cotter also claims that his right of association with another outspoken professor facilitated the freedom of speech. However, Cotter's association primarily involved criticism of the Dean and the University's management and is intertwined here with the right to free speech.

■ Under these circumstances, we conclude that Cotter's right of association is indistinguishable from his right to free speech and, therefore, that his claim of a violation of freedom of association "must collapse into the foregoing discussion regarding [his] right to free speech." *Schalk v. Gallemore,* 906 F.2d 491, 498 (10th Cir.1990) (noting that public concern analysis is not a necessary step in all public employee/freedom of association claims). *See Flanagan v. Munger,* 890 F.2d 1557 (10th Cir.1989)(fn.7)(expressing doubt regarding

applicability of public concern analysis to freedom of association claims).

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge METZGER and Judge PLANK, concur.